EVONNE CHAN, Plaintiff-Appellee, *v.* JOE CHAN, Defendant-Appellant

NOS. 12048 & 12073

(FC-D NO. 85-479)

DECEMBER 30, 1987

BURNS, C. J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C. J.

Defendant Joe Chan (Husband) appeals various decisions, orders, judgments, and decrees of the family court. However, he is essentially appealing the family court's (1) March 5, 1987 Decision and April 30, 1987 Supplemental Decree Granting Absolute Divorce relating to the division and distribution of the property and debts of the parties; (b) March 17, 1987 Judgment of Civil Con-

tempt; and (c) May 20, 1987 Order Granting Attorney's Fees and Costs. We affirm.

Plaintiff Evonne Chan (Wife) contends that Husband's appeal is frivolous. We disagree.

On March 14, 1985, in Third Circuit FC-D No. 85-134, Husband filed a complaint for divorce against plaintiff Evonne Chan (Wife). On October 21, 1985 the family court granted Husband's October 1, 1985 Hawaii Family Court Rules (HFCR) Rule 41(a) (2) motion for dismissal of FC-D No. 85-134 without prejudice. In his motion Husband had indicated his desire and intent to initiate divorce proceedings in California which he considered to "be a more convenient forum."

On October 15, 1985 Wife filed a complaint in the instant case for divorce against Husband. On November 29, 1985 the family court denied Husband's November 7, 1985 HFCR Rule 12(b) (6) motion to dismiss Wife's complaint. On December 23, 1986 the family court entered a divorce decree wherein it reserved jurisdiction over the division and distribution of the property and debts of Husband and Wife. On March 5, 1987 the family court entered a decision stating, *inter alia,* as follows:

A. *Coin Collection*

Mrs. Chan has established by competent evidence that a collection of coins was accumulated during the marriage by Mr. Chan using marital funds. The collection consists of both gold and silver coins. An approximate inventory is as follows:

*Silver* — Morgan Silver Dollars consisting of 4 full sets (48 coins per set) of M.S. 65 grade and approximately 20 incomplete sets of M.S. 60-63 grade coins.

*Gold* — Gold coins consisting of 4 sets (12 coins per set) of gold types including One Dollar through Twenty Dollar gold pieces; 5-6 sets of Indian Head gold; 18-20 Twenty Dollar gold pieces; 12 Two and One-half Dollar gold pieces; 6-7 sets of other unspecified gold pieces. The collection was accumulated piece by piece and placed at one time in the Bank of Irvine, California, in a safe deposit box. Thereafter it was transported to Hilo by Mrs. Chan on United Airlines. The collection was kept in a safe at the residence of the parties until January 1, 1985 when Mr. Chan removed the collection from the safe. The

collection weighs approximately 80 pounds. While Mr. Chan denies the existence of such a collection, the Court concludes that the collection exists and is presently under the control of Mr. Chan. The Court will order the production of the collection by Mr. Chan for division in kind, one half to Plaintiff and one half to Defendant, subject to conditions set forth in Paragraph (H) hereinafter. The collection will be produced by noon, March 12, 1987, at the office of Plaintiff's counsel in Hilo. The Court will retain jurisdiction over this issue.

\* \* \*

C. *Other Marital Property*

\* \* \*

6) Court-held coins

During the pendency of the case a portion of the coin collection of the parties was turned in to the Court. The value of the collection is $5,000.00. The parties will each receive one-half the numismatic value of the collection held by the Court.

\* \* \*

G. *Attorneys Fees*

Mrs. Chan has been required to spend additional money for attorneys fees as a direct result of Mr. Chan's failure to produce the coin collection and as a result of the legal action filed by Mr. Chan in California regarding the Promissory Note from Knippers Rental. As a result, the Court will require Mr. Chan to pay all the attorneys fees and costs incurred by Mrs. Chan in the California case defense. Mr. Chan will also be required to pay all of Mrs. Chan's attorneys fees and costs relating to the coin collection issue. Counsel for Mrs. Chan will submit an estimate of time and charges and costs. The Court will retain jurisdiction over this issue.

\* \* \*

H. *Miscellaneous*

Once the coin collection has been produced and inventoried, and assuming the value of the collection exceeds the debts owed to John Bjornen and Timothy Bjornen, then the Court orders that a portion of the collection sufficient to pay

said debts be sold and the proceeds used to pay said debts. The remainder of the collection will be divided equally between the parties based on numismatic value.

If and only if the events noted above occur, then the parties will divide equally the net monthly payment from Knippers Rental. In the event the coin collection is not produced by the deadline noted previously, a contempt hearing will be heard in the Keaau Court on March 17, 1987 at 10:30 AM.

On March 17, 1987, after a hearing, the family court entered a judgment of civil contempt stating, *inter alia,* as follows:

After full consideration of all of the testimony and evidence, the Court hereby concludes by clear and convincing evidence that Contemnor is committing civil contempt of Court in violation of HRS section 710-1077(6) by the following conduct: willfull [sic] failure to produce coin collection and jewelry by March 12, 1987 as ordered by the undersigned in Decision of March 5, 1987.

The Court further concludes that Contemnor has the current ability to cease the contumacious conduct but that Contemnor refuses to do so.

Based on Contemnor's being in civil contempt and Contemnor's current ability to cease the contumacious conduct, the Court HEREBY ORDERS that:

Contemnor is committed to the custody of the Director of the Department of Social Services and Housing, Intake Service Center, and held there until Contemnor agrees to do the following: produce coin collection and jewelry as described in this Court's Decision of March 5, 1987 at the office of counsel for Plaintiff.

Contemnor shall be brought before this Court on Monday, March 30, 1987 at 9:00 a.m. in the Keaau Court (or sooner if Contemnor agrees to perform the actions set forth above) for a review of this matter.

On March 25, 1987 Wife filed a Motion for Further Hearing and Reconsideration. On April 30, 1987 the family court entered both an Order Granting in Part and Denying in Part Plaintiff's Motion for Reconsideration and/or for Further Hearing and a Supplemental Decree Granting Absolute Divorce.

On May 20, 1987 the family court entered an "Order Granting Attorney's Fees and Costs" stating, *inter alia,* as follows:

(3) Marlene Thomason's[1] attorney's fees and costs as of February 6, 1987, relating to the California lawsuit, in the sum of $3,468.75, shall be paid from the proceeds held in the court-ordered escrow account;

(4) Santa Ana Equipment Rental Inc.'s attorney's fees and costs as of October 17, 1986, relating to the California lawsuit in the sum of $4,434.00, shall be paid from the proceeds held in the court-ordered escrow account.

(Footnote added.)

Husband contends that the family court reversibly erred in the following respects: (1) The family court denied Husband's right to a fair trial (a) when it decided that its October 21, 1985 grant of Husband's HFCR Rule 41(a) (2) motion for dismissal of Husband's FC-D No. 85-134 without prejudice did not preclude it from denying Husband's November 7, 1985 HFCR Rule 12(b) (6) motion to dismiss Wife's FC-D No. 85-0479, the instant case, (b) when it failed to award Husband sufficient funds to pay for necessary fees and costs, and (c) when it ordered Husband to pay, thereby relieving Wife of an obligation to pay, the attorney fees incurred by Wife and a third party as defendants in a California case initiated by Husband; (2) by considering the evidence presented in the divorce case when it decided the civil contempt case; and (3) when it found Husband to be in civil contempt without any valid proof of his then present ability to comply with the family court's order.

Husband's contentions (1) (a), (b), (c), and (2) are without adequate basis in fact and/or law and we summarily reject them. We will discuss only contention (3).

Husband does not challenge the validity of the family court's March 5, 1987 Decision insofar as it disbelieved Husband's denial of the existence of the silver and gold coin collection, found that Husband took possession of the collection on January 1, 1985, which was the date Husband and Wife physically separated, found "that the collection exists and is presently under the control of Mr. Chan," and entered the "turnover order" requiring Husband to

---

[1]Marlene Thomason was Mrs. Chan's attorney in a California lawsuit filed by Mr. Chan against Mrs. Chan and others.

produce the coin collection on or before March 12, 1987. Husband challenges the actions of the family court at the March 17, 1987 hearing wherein it relied on the evidence and findings involved in the March 5, 1987 Decision and declined to require proof de novo of Husband's present ability to comply with the March 5, 1987 Decision. In our view, Husband misunderstands the applicable law.

In *Maggio v. Seitz*, 333 U.S. 56, 75-76, 68 S.Ct. 401, 411, 92 L.Ed. 476, 490-91 (1947) (footnote omitted), the United States Supreme Court stated in relevant part as follows:

> [T]he turnover order may not be attacked in the contempt proceedings because it is res judicata on this issue of possession at the time as of which it speaks. But application of that rule in these civil contempt cases means only that the bankrupt, confronted by the order establishing prior possession, at a time when continuance thereof is the reasonable inference, is thereby confronted by a prima facie case which he can successfully meet only with a showing of present inability to comply. He cannot challenge the previous adjudication of possession, but that does not prevent him from establishing lack of present possession. Of course, if he offers no evidence as to his inability to comply with the turnover order, or stands mute, he does not meet the issue. Nor does he do so by evidence or by his own denials which the court finds incredible in context.[2]

(Footnote added.)

Thus, in *United States v. Rylander*, 460 U.S. 752, 757, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521, 528 (1983), the United States Supreme Court stated in relevant part as follows: "In a civil contempt proceeding such as this, of course, a defendant may assert a *present* inability to comply with the order in question. * * * It is settled,

---

[2]The last sentence of this quotation from *Maggio v. Seitz*, 333 U.S. 56, 68 S. Ct. 401, 92 L. Ed. 476 (1947) suggests that an alleged contemnor's denial of his present inability to comply is, if ultimately disbelieved, insufficient to satisfy his burden of producing evidence. In the situation where defendant only reiterates testimony or reoffers evidence that he presented at the hearing that resulted in the turnover order or offers evidence that he could have presented at that hearing but did not, we agree with *Maggio v. Seitz*. However, in the situation where his denial is not a reiteration and he offers evidence that he could not have presented at that hearing, we disagree. The answer to the question whether a party has satisfied his burden of producing evidence depends on whether admissible evidence has been introduced, not on whether at the conclusion of the trial the evidence is found to be credible.

however, that in raising this defense, the defendant has a burden of production."

Rules 301(3), (4) of the Hawaii Rules of Evidence, Chapter 626, Hawaii Revised Statutes (1985) provide:

(3) "Burden of producing evidence" means the obligation of a party to introduce evidence of the existence or nonexistence of a relevant fact sufficient to avoid an adverse peremptory finding on that fact.

(4) "Burden of proof" means the obligation of a party to establish by evidence a requisite degree of belief concerning a relevant fact in the mind of the trier of fact. The burden of proof may require a party to establish the existence or nonexistence of a fact by a preponderance of the evidence or by clear and convincing proof.

At the March 17, 1987 civil contempt hearing, Wife had the burden of proving that Husband had the power to comply with the March 5, 1987 turnover order and that he failed to do so. Wife established a prima facie case by relying on the March 5, 1987 turnover order, the reasonable inference that the coin collection remained in Husband's possession since the hearing which resulted in the turnover order, and by introducing evidence of Husband's noncompliance. Since Husband alleged his present inability to comply, he had the burden of producing evidence of that fact. Husband's March 17, 1987 reiteration of his previously disbelieved March 5, 1987 denial of the collection's existence did not satisfy his burden, *Maggio v. Seitz, supra,* and he offered no other evidence of his inability to comply on March 17, 1987. Therefore, he failed to satisfy his burden of production.

Husband relies on *Murray v. Murray,* 60 Haw. 160, 587 P.2d 1220 (1978), but we distinguish it. In *Murray* the family court failed to make "the indispensable finding that the contemnor possessed present financial ability to comply with the condition set by the court for his release from confinement[.]" 60 Haw. at 165, 587 P.2d at 1224. Here, in its March 17, 1987 judgment of civil contempt, the family court decided that Husband had "the current ability to cease the contumacious conduct[.]"

*Sua sponte* we will discuss an issue relating to Husband's filing of five amended notices of appeal. On March 25, 1987 Husband filed

a Notice of Appeal of the family court's March 17, 1987 Judgment of Civil Contempt. On April 27, 1987 Husband filed an Amended Notice of Appeal adding the March 31, 1987 Order Granting Motion for Setting of Supersedeas Bond. On May 20, 1987 Husband filed a Second Amended Notice of Appeal adding the April 30, 1987 Supplemental Decree Granting Absolute Divorce and the April 30, 1987 Order Granting in Part and Denying in Part Plaintiff's Motion for Reconsideration and/or for Further Hearing. On June 1, 1987 Husband filed a Third Amended Notice of Appeal adding the May 20, 1987 Order Granting Attorney's Fees and Costs and the January 21, 1987 Assignment of Interest in Agreement of Sale. On June 30, 1987 Husband filed a Fourth Amended Notice of Appeal adding the June 22, 1987 Order Holding in Abeyance Plaintiff's Motion to Compel Execution of Conveyance Documents. On August 17, 1987 Husband filed a Fifth Amended Notice of Appeal adding the July 23, 1987 Order Granting Plaintiff's Motion to Compel Execution of Conveyance Documents.

Husband's procedure of filing successive amended notices of appeal was obviously intended to satisfy appellate jurisdiction requirements, see Rule 4, Hawaii Rules of Appellate Procedure, while avoiding additional paperwork and the necessity of paying additional fees for the filing of each notice of appeal. See HRS §§ 607-5(32), 607-6 (1985). Such procedure, although understandable, may create a bigger and more expensive problem than it attempts to solve. Since an amended notice of appeal relates back to the notice of appeal it purports to amend, it does not appeal an order, judgment, or decree entered subsequent to the notice of appeal it purports to amend. Conversely, a new notice of appeal has no relation to a previously filed notice of appeal. The fact that a notice of appeal is titled "Amended" is evidence that it is in fact an amended notice of appeal. The fact that a notice of appeal appeals an order, judgment, or decree entered subsequent to the prior notice of appeal is evidence that it is in fact not an amended notice of appeal.

Affirmed.

*Jack F. Schweigert* on the briefs for defendant-appellant.

*William J. Rosdil* and *Calvin J. Fukuhara* on the brief for plaintiff-appellee.