**MARSHA ELLEN FILLHART MARK,** Plaintiff–Appellant, v.
**HERBERT MUIN–HENG MARK,** Defendant–Appellee

NOS. 15232 and 15362

(FC–D NO. 85–1119)

MAY 1, 1992

BURNS, C.J., HEEN, J., AND CIRCUIT JUDGE
YIM, ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY BURNS, C.J.

In appeal No. 15232, Plaintiff Marsha Ellen Fillhart Mark (Mother) appeals the family court's February 14, 1991 Order Granting Motion for Attorney's Fees, Costs and Guardian Fees (February 14, 1991 Order). We affirm.

In appeal No. 15362, Mother appeals the family court's April 25, 1991 Order Following Plaintiff's and Defendant's Motions for Relief After Order or Decree, Filed August 10, 1990 and August 21, 1990 (April 25, 1991 Order). We vacate paragraph 6 (relating to Children's Educational Expenses) and paragraph 7 (relating to Child Support) of the April 25, 1991 Order and remand for a decision on those issues in the light of this opinion. In all other respects, we affirm.

On June 14, 1991 the family court "approved and so ordered" a Stipulation to Consolidate Appeals Filed on March 18, 1991 and May 23, 1991. The cited authority was Hawai'i Rules of Appellate Procedure (HRAP) Rule 3(b). We conclude that HRAP Rule 3(b) does not give the family court that power. However, since consolidation of the two appeals is appropriate and they were briefed as if they had been consolidated, this opinion decides both appeals.

## FACTS

Mother and Defendant Herbert Muin–Heng Mark (Father) were married on April 27, 1974 and divorced on March 14, 1988. Daughter was born on December 20, 1977 and Son was born on October 23, 1981. The family court's May 31, 1988 Amended Divorce Decree awarded sole legal custody of the children to Mother and shared physical custody to Mother and Father.

In our April 5, 1989 Memorandum Opinion in appeal No. 13185, we noted that Mother was awarded custody of the children for 205 days per year and Father for 160 days per year. According to the July 8, 1987 Child Support Guidelines, Father's ability to pay child support was $726.28 per month and Mother's was $1,344.64. We vacated the family court's May 31, 1988 order requiring Father to pay Mother child support of $400.00 per month.

Thereafter, at a July 18, 1990 hearing, the family court orally prohibited Mother from changing the children's schools without confirming with Father well in advance of such decision. The family court's August 8, 1990 order required Mother to pay Father child support of $26.78 per month through July 1990. Commencing August 1990, the family court required Mother to pay Father child support of $125 per month. It also ordered as follows:

> 5. **Children's Educational Expenses.** Beginning with the 1990–91 school year, as long as either or both of the parties' children attend private schools, [Mother] shall pay two–thirds (2/3) and [Father] shall pay one–third (1/3) of the necessary and mandatory educational expenses of the children. . . .

> The children's present private school enrollments [Daughter at Iolani, Son at Our Redeemer Lutheran] shall not be changed unless, at a reasonable time before the date of any proposed change, the parties meet and confer with regard to that proposed change.

On August 10, 1990 Mother filed a motion for sole legal and physical custody of the children subject to Husband's "rights of visitation pursuant to visitation schedule Type B." In this motion, Mother revealed that

> [Mother] has been offered and accepted a job at Southern California Permanente Medical Group, Huntington Park Clinic, Huntington Park, California, as of September 4,

1990. [Mother] intends to relocate and reside in Huntington Beach, California and to commence work on or about September 4, 1990. [Mother] intends to place the children of the parties in Harbor View Elementary School in Huntington Beach, California and subsequently in Marina High School which ranks in the 92 percentile in the California Assessment Program. [Mother] should be awarded primary physical custody and [Father] should be awarded Type B visitation. Child Support should be calculated pursuant to the Child Support Guidelines Worksheet. [Mother] discussed the subject of moving to the mainland with the children's psychiatrist, Dr. Adams, who advised her not to inform the children and [Father], for it would be upsetting to the children and it would drag them in the middle of a custody battle; and with the children's psychologist, Dr. Carringer who advised that this was a no–win situation and that [Mother] should do what was best for her.

Mother's August 10, 1990 motion was not served on Father until August 21, 1990.

Meanwhile, the responses to Father's August 13, 1990 inquiries at Iolani, Our Redeemer Lutheran, Kaiser Permanente, and the condominium where Mother resided, informed him that Mother had relocated to California and in early August 1990 had withdrawn the two children from their respective schools. On August 21, 1990 the family court entered an order granting Father's *ex parte* motion for immediate temporary legal and physical custody of the children. On August 28, 1990 Father moved for permanent custody, to require Mother to re–enroll the children in the schools from which she had withdrawn them, and for attorney fees and costs.

On September 5, 1990 the family court appointed James Wada as the children's guardian ad litem (GAL). On October 4,

1990 Patricia Dougherty, the family court officer who conducted the social study, recommended the award of the legal and physical custody of the children to Father subject to Mother's rights of reasonable visitation. On November 15, 1990 Father's August 28, 1990 motion was set for hearing during the week of January 28, 1991. The consolidated hearing on Mother's August 10, 1990 motion and Father's August 28, 1990 motion actually commenced on January 31, 1991.

On January 9, 1991 Father's counsel delivered to Mother an offer pursuant to Hawai'i Family Court Rules (HFCR) Rule 68. It stated in relevant part as follows:

> (1) Legal and physical custody of [the children] would be awarded to [Father] in accordance with the recommendation of the social study.
>
> (2) [Mother] would be awarded reasonable "Type B" visitation per the definition set forth in the Hawai'i Divorce Manual and as set forth in the social study. Both parties shall permit flexibility in the visitation schedule to accommodate the children's academic, sports and extracurricular activities schedules.
>
> (3) The parties would to [sic] pay the children's private school educational expenses with each party to pay a proportionate share which shall be revised from time to time to reflect the current gross income of each of the parties.
>
> (4) [Child support guidelines] would be ordered based on the current gross earnings of the parties. Medical and dental insurance coverage for the children shall be provided by the medical/dental benefits coverage provided as an employee benefit to [Mother] and her children by her employer. [Father] would pay routine uninsured medical and dental expenses for them. The parties

would split any extraordinary uninsured medical or dental costs incurred on the childrens' behalf.

(5) Assuming an agreement settling this case prior to the upcoming contested hearing, each party would bear the cost of their own attorney's fees and costs.

On February 4, 1991 the family court orally announced its decision on the merits. On February 14, 1991 the family court entered an order requiring (a) each party to pay one–half of the GAL's $5,075.00 fees and $16.45 costs and (b) Wife to pay Husband's $8,759.10 attorney fees. On April 25, 1991 the family court entered its order on the merits which stated in relevant part as follows:

3. **Child Custody.** [Father] is awarded sole legal and physical care, custody and control of the minor children of the parties, subject to [Mother's] rights of reasonable visitation as set forth herein. . . .

\* \* \*

5. **Continuing Private School Enrollment.** Neither party shall change or otherwise interfere with the children's present private school enrollments unless, at a reasonable time before the date of any proposed change, the parties confer with regard to that proposed change.

6. **Children's Educational Expenses.** Beginning with the 1991–92 school year, as long as either or both of the parties' children attend private schools, each of the parties shall pay one–half (1/2) of the children's tuition, book costs and required school fees.

7. **Child Support.** [Mother] shall pay to [Father], as and for the support and maintenance of the parties' minor children the sum of $1,045.00 per child per month, for a total sum of $2,090.00 per month.

The family court entered an identical order on April 26, 1991.

On June 13, 1991 the family court entered its Findings of Fact and Conclusions of Law which state in relevant part as follows:

## I. Findings of Fact

25. [Mother] had been considering moving to the mainland since early 1990. She took the California medical boards and was licensed to practice medicine there early in 1990. In April of 1990 she advised Kaiser Permanente in Honolulu that she would resign in August of that year. She purchased a townhouse condominium in Huntington Beach, California, and escrow was to close in August. She moved out of her Ward Avenue condominium in Honolulu early in August and shipped her household furnishings to California.

26. [Mother] did not notify [Father] of her plans to move to California with the children prior to doing so.

* * *.

28. [Mother] also did not tell the children of her plans to move with them to California prior to doing so.

* * *

35. Both [Mother] and her then attorney [William J. Eggers, III] remained silent about [Mother's] relocation plans during the [July 1990] remand hearing[.]

* * *

47. [Father] was able to re-enroll both children in their respective schools[.]

* * *

60. [Mother's] gross salary at Southern California Permanente Medical Group is $11,000 per month. At present, approximately $2,200 is deducted from this monthly salary as her contribution toward her pension plan.

* * *

62. [Father's] gross salary from the City and County of Honolulu is just under $4,300 per month.

\* \* \*

64. The cost of keeping both [children] enrolled in their respective private schools in the 1990–91 school year was $10,000.

## DISCUSSION

### I.

Mother contends that the family court's June 13, 1991 Findings of Fact and Conclusions of Law should be stricken because they were entered more than ten days after she filed her notices of appeal on March 18, 1991 and May 23, 1991. We disagree.

HFCR Rule 52 specifies that:

1. In cases where a notice of appeal has not been filed, the family court may enter findings of fact and conclusions of law;

2. In cases where a notice of appeal has been filed, the family court must enter findings of fact and conclusions of law unless it entered a written decision which contains them; and

3. If the family court wants the parties or either of them to assist it by submitting proposed findings of fact and conclusions of law, it may order the parties or either of them to submit their proposals "within 10 days after the filing of the notice of appeal, unless such time is extended by the court." In other words, the sole judge of the timeliness of the submission of proposed findings of fact and conclusions of law is the family court that ordered the parties or either of them to submit them.

### II.

In her Opening Brief, Mother states:

It appears that the court and father's attorney, upon learning of the filing of the notices of appeal, tried in haste to put into the record extensive written findings and

conclusions in an attempt to bolster the earlier decision of the court for purposes of withstanding appellate review.

Mother's notices of appeal were filed on March 18, 1991 and May 23, 1991. The family court entered its Findings of Fact and Conclusions of Law on June 13, 1991. Mother did not file her Opening Brief until August 26, 1991.

To the extent that Mother is suggesting that the family court and Father's attorney did something inappropriate and not in accordance with the applicable rules, she is wrong. The family court did exactly what HFCR Rule 52 required and allowed it to do. It is expected that the findings of fact and conclusions of law will bolster the earlier written orders and decrees of the court for purposes of withstanding appellate review. To the extent that there are any material differences between the family court's oral decisions and orders and its subsequent written orders and decrees, a court's oral decisions and orders are not final orders and decrees. *Naki v. Hawai'ian Elec. Co.*, 50 Haw. 85, 431 P.2d 943 (1967).

## III.

Mother contends that HFCR Rule 58(a) guaranteed her the opportunity to file objections to the June 13, 1991 Findings of Fact and Conclusions of Law and that it should be stricken because she was not afforded such an opportunity. We disagree with Mother's interpretation of HFCR 58(a). HFCR Rule 58(a) applies to decrees and orders, not findings of fact and conclusions of law.

## IV.

Conclusion of Law 10 states in relevant part as follows: "Under the criteria set forth in Hawai'i Revised Statutes, § 580–47(a), and Rule 68, HFCR, [Mother] should pay the attorney's fees and costs incurred by [Father] with regard to this action."

Mother contends that HFCR Rule 68 does not authorize the award in this case and that the family court did not cite any other

basis except in Conclusion of Law 10 which she contends should be stricken. We assume, but do not decide, that HFCR Rule 68 and HRS § 580–47(a) did not authorize the award. The fact, however, that the family court did not accurately cite the basis of its authority to enter the order did not diminish its authority to enter the order. *See Shea v. City & County*, 67 Haw. 499, 692 P.2d 1158 (1985). We conclude that HRS § 580–47(e) (1985) gave the family court the discretion to enter Conclusion of Law 10 and that the family court did not abuse its discretion in doing so.

HRS § 580–47(e) states as follows:

> (e) **Attorney's fees and costs.** The court hearing any motion for orders either revising an order for the custody, support, maintenance, and education of the children of the parties, or an order for the support and maintenance of one party by the other, or a motion for an order to enforce any such order or any order made under subsection (a) of this section, may make such orders requiring either party to pay or contribute to the payment of the attorney's fees, costs, and expenses of the other party relating to such motion and hearing as shall appear just and equitable after consideration of the respective merits of the parties, the relative abilities of the parties, the economic condition of each party at the time of the hearing, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case.

## V.

The November 1, 1989 Amended Child Support Guidelines (ACSG) were established pursuant to HRS § 576D–7 (1985 and Supp. 1991) and are applicable in this case. We label the amount that the ACSG requires a party to pay absent exceptional circumstances as the "ACSG norm." The ACSG has three categories of

support: primary child support (PCS), standard of living adjustment (SOLA), and private education expense (PEX). Mother's PCS ($334) plus SOLA ($1,756) was $2,090. The family court ordered Mother to pay Father $2,090 per month for the children's living expenses (not including PEX) and, in addition thereto, one–half of the children's $10,000 annual PEX. Mother contends that in her situation, the ACSG norm called for her to pay $2,090 per month for the combination of the children's living expenses and PEX. She contends that it was Father's burden to prove that exceptional circumstances required her to pay more and that Father failed to satisfy his burden. We disagree with Mother.

Part III of the ACSG states in relevant part as follows:

### Exceptional Circumstances

* * *

—Private education expenses are considered as part of SOLA unless such expenses are so extraordinary that SOLA cannot adequately cover it or if the child has been in private school with the agreement of the parties prior to separation.

We agree with the family court that the phrase "private education expenses" includes tuition, books, and required school fees.

According to her Opening Brief, "it is [M]other's position that a strict disjunctive construction of the [ACSG Part III] provision [quoted above] would lead to illogical, and therefore unreasonable, results." We disagree with Mother. The part III provision quoted above defines the relevant issues and, thereby, assigns the burden of proof. As we stated in *Richardson v. Richardson*, 8 Haw. App. 446, 457, 808 P.2d 1279, 1286–87 (1991), "[t]he party seeking a Part III exceptional circumstance deviation from the amount computed according to Parts I [PCS] and II [SOLA] has the burden of proof."

As we interpret it, the ACSG Part III provision quoted above says that (1) when with the agreement of the parties the child has not been in private school since prior to separation, then PCS and SOLA include PEX unless and to the extent such expenses are so extraordinary that PCS and SOLA cannot adequately cover the child's living expenses including PEX; or (2) when with the agreement of the parties the child has been in private school since prior to separation, then PCS and SOLA do not include PEX and PEX is a separate item.

Thus, there are three possibilities:

(A) In situation (1), the ACSG norm requires the non–custodial parent to pay the total of PCS plus SOLA as his or her share of the total of the child's living expenses including PEX. In situation (1), the party seeking an order requiring the non–custodial parent to pay more or less than the ACSG norm for the total of the child's living expenses including PEX has the burden of proving exceptional circumstances.

(B) In situation (2), the ACSG norm requires the non–custodial parent to pay the total of PCS plus SOLA as his or her share of the child's living expenses not including PEX. In situation (2), the party seeking an order requiring the non–custodial parent to pay more or less than the ACSG norm for the child's living expenses not including PEX has the burden of proving exceptional circumstances.

(C) In situation (2), the norm requires each parent pay that proportion of PEX that his or her monthly gross income bears to the combined monthly gross income of both parties. In situation (2), the party seeking an order requiring either parent to pay more or less than the norm for PEX has the burden of proving exceptional circumstances.

The family court must decide (B) before it decides (C).

Mother contends that this case presents situation (1). We disagree. The record in this case is clear that with the agreement of the

parties the children were in private school since prior to separation. Therefore, this case presents situation (2). As stated in (B) above, to the extent that Mother contended that exceptional circumstances justified an order requiring her to pay less than the $2,090 total of PCS plus SOLA for the children's living expenses not including PEX, she had the burden of proof. As stated in (C) above, to the extent that Mother contended that exceptional circumstances justified an order requiring her to pay for a smaller proportion of PEX than her monthly gross income bore to the combined monthly gross income of both parties, she had the burden of proof. Although Mother's gross income is nearly seventy–two percent of the combined gross income of both parties, the family court ordered her to pay only fifty percent of PEX. Since Husband did not appeal, we will not increase the percentage Mother has been ordered to pay.

On remand, Mother has the burden of proving that exceptional circumstances justify (a) an order requiring her to pay less than the $2,090 total of PCS plus SOLA for the children's living expenses not including PEX; and (b) an order requiring her to pay less than fifty percent of PEX.

## CONCLUSION

Accordingly, as to appeal No. 15232, we affirm. As to appeal No. 15362, we vacate paragraph 6 (relating to Children's Educational Expenses) and paragraph 7 (relating to Child Support) of the April 25, 1991 order and remand for a decision on those issues in the light of this opinion. In all other respects, we affirm.

*Renee M. L. Yuen* and *Richard K. Perkins* (Yuen & Perkins, of counsel) on the briefs for plaintiff–appellant.

*Robert M. Harris* on the brief for defendant–appellee.