CORINNA KEHAULANI BAYLEY, Plaintiff-Appellee,
v.
THOMAS McDOWELL BAYLEY, Defendant-Appellant.
No. 27884
Intermediate Court of Appeals of Hawaii.
August 31, 2009.
On the briefs:
Charles H. Brower, for Defendant-Appellant.
Robert M. Harris, Judith A. Schevtchuk, for Plaintiff-Appellee.

MEMORANDUM OPINION
WATANABE, Acting Chief Judge, NAKAMURA, and FUJISE, JJ.
This appeal arises out of motions for post-decree relief filed by Plaintiff-Appellee Corinna K. Bayley (Corinna) and Defendant-Appellant Thomas M. Bayley (Thomas) in a divorce action. Thomas appeals from the following orders and judgments issued by the Family Court of the First Circuit (family court): 1) "Decision and Order on Post-Decree Motion to Modify Divorce Decree" (Post-Decree Decision and Order), filed on March 13, 2006; 2) order denying Thomas's motion to reopen trial testimony and for new trial, filed on April 12, 2006; 3) order awarding Corinna legal fees and costs, filed on June 26, 2006; 4) order modifying divorce decree, filed on October 26, 2006; 5) order denying Thomas's motion for relief from order awarding legal fees and costs, filed on December 7, 2006; 6) Judgment in the principal sum of $45,000 for legal fees and costs, filed on December 11, 2006; 7) Judgment in the principal sum of $18,292.64 for arrearages on child support, Corinna's share of Thomas's military retirement, and sanctions for failure to comply with discovery, filed on December 11, 2006; and 8) order granting Corinna's motion for an advance of appellate attorney's fees and costs, filed on January 24, 2007.[1] The Post-Decree Decision and Order resolved six motions for post-decree relief filed by Corinna and Thomas.
On appeal, Thomas claims that the family court[2] erred by: 1) requiring Thomas to pay all of his children's private education expenses in addition to the full amount of child support calculated under the Amended Child Support Guidelines (ACSG); 2) ordering that Thomas's Merrill Lynch and Prudential Financial accounts be liquidated and placed in trust to ensure his payment of his children's private education expenses and uninsured health care expenses; 3) denying Thomas's motion for reimbursement of certain spousal support paid to Corinna; 4) granting Corinna's request to add the children to her medical insurance plan and to factor Corinna's premium payments into calculating Thomas's child support obligations; 5) denying Thomas's post-trial motion that Judge William K. Wallace III, the per diem judge who presided over the trial of the parties' motions for post-decree relief, recuse himself and order a new trial; and 6) awarding attorney's fees to Corinna.
For the reasons discussed below, we vacate in part, affirm in part, and remand the case for further proceedings consistent with this opinion.

BACKGROUND

I. Facts
Thomas was a career officer in the United States Navy and eventually became the commanding officer of a nuclear submarine before he retired from the Navy in 2005. Thomas and Corinna were married in 1991. Their first child (Child 1) was born in 1992, and their second child (Child 2) was born in 1993.
In 1997, Thomas was reassigned to Pearl Harbor, where he and Corinna had originally met, and Thomas, Corinna, and their children relocated to Hawai`i. Thomas and Corinna separated in 1998. At the time of their separation, the children were enrolled in private schools. Child 1 in kindergarten and Child 2 in pre-school.
In March 1999, Corinna filed a complaint for divorce. On October 20, 1999, Corinna filed a series of documents with the family court, including an ACSG Worksheet and an Agreement Incident to Divorce (AITD) . The ACSG Worksheet, which was prepared by Corinna's attorney and signed by Corinna, calculated Thomas's child support obligation as $1,830 per month. Attached to the ACSG Worksheet was an Exceptional Circumstance Form which stated that the parties had agreed to a monthly child support amount of $1,430, instead of the $1,830 ACSG Worksheet amount, because "[Thomas] is paying for all of the children's . . . private school education expenses" and "uninsured medical and dental insurance [sic][3]." The Exceptional Circumstance Form was not signed.
The contemporaneously filed AITD provided, among other things, that Thomas shall pay $1,430 in monthly child support, that Thomas shall be solely responsible for the children's private education expenses through high school, and that Thomas shall maintain medical and dental insurance for the children and pay for any uninsured expenses. These provisions were "subject to further order of the Court." The parties' children were enrolled in the same private school, which offered grade levels through high school, when the AITD was signed.
The AITD also provided that Thomas would pay Corinna $700 per month in alimony until July 2005. The issue of alimony was subject to review based on a material and significant change of circumstances, and Corinna had an affirmative duty to advise Thomas of "any cohabitation undertaken as a conscious decision to live together in lieu of marriage which (the parties agree) may constitute a material and significant change of circumstances."
The family court approved the AITD and incorporated it into the parties' divorce decree, which was filed on November 8, 1999. The divorce decree awarded the parties joint legal custody of the children, with sole physical custody awarded to Corinna, which was consistent with the desires expressed by the parties in the AITD.
In 2000, Corinna began dating a man, who began living full-time with Corinna and the children in or about January 2003. Corinna did not advise Thomas that she was living with another man. In May 2005, Thomas purchased a home in Connecticut, which he later occupied with his civil-union partner.

II. Procedural History
Corinna filed three motions for post-decree relief on May 13, 2005, July 15, 2005, and November 10, 2005, requesting, among other things, that: 1) Thomas's child support payments be recalculated based on the updated 2004 ACSG and the parties' current incomes; 2) Thomas be required to establish an educational and medical trust fund to secure payment of the children's private education expenses and uninsured medical expenses; 3) Corinna be allowed to add the children to her employer's medical plan at a cost of $489.05 per month, with the cost of that coverage included in the computation of child support under the ACSG; 4) Corinna be granted sole legal custody of the children; 5) the family court freeze two of Thomas's investment accounts and issue restraining orders prohibiting Thomas from wasting or disposing of assets pending the resolution of Corinna's post-decree motions; and 6) Thomas be required to pay Corinna's attorney's fees and costs.
Thomas also filed three motions for post-decree relief on June 9, 2005, June 29, 2005, and July 21, 2005, requesting, among other things, that: 1) Thomas's obligation to pay the children's education expenses be modified by requiring Corinna to pay a portion of the private school expenses or by having the children move to a less expensive school; 2) a downward deviation be granted from the amount calculated under the ACSG for Thomas's child support obligation; 3) Corinna be required to reimburse Thomas for the amount of alimony he paid during the time that she cohabited with her boyfriend; and 4) Corinna be required to pay Thomas's legal fees and costs.
The family court held a one-day trial on January 3, 2006. On March 13, 2006, the family court issued its Post-Decree Decision and Order, which resolved the parties' motions for post-decree relief. The family court made the following rulings relevant to this appeal: 1) Thomas's monthly child support payments will increase from $1,430 to $3,510 (the new amount calculated under the ACSG); 2) Thomas shall remain solely responsible for the children's private education expenses and the children shall be allowed to remain at their current private school; 3) Thomas's Merrill Lynch and Prudential Financial accounts will be frozen and placed in trust, with Corinna serving as trustee, to secure funding for payment of the children's private education expenses and uninsured medical expenses; 4) the children may be added to Corinna's medical insurance plan at a cost of $489.05 per month, and this cost shall be factored into the calculation of Thomas's future child support obligations; 5) Thomas's request that Corinna reimburse him for alimony payments is denied; and 6) Thomas must pay all of Corinna's legal fees and costs associated with the trial, in an amount not to exceed $45,000.
On March 23, 2006, Thomas filed a motion to reopen trial testimony and for a new trial. Thomas argued that Judge Wallace should recuse himself due to an appearance of impropriety. The family court denied the motion. On April 12, 2006, Thomas filed a Notice of Appeal from the Post-Decree Decision and Order. On May 31, 2006, the family court entered findings of fact and conclusions of law in support of its Post-Decree Decision and Order.

STANDARDS OF REVIEW

I. Family Court Decisions
The family court generally possesses wide discretion in making its decisions, and those decisions are reviewed for abuse of discretion. In re Doe, 95 Hawai`i 183, 189-90, 20 P.3d 616, 622-23 (2001). We review the family court's findings of fact under the "clearly erroneous" standard. Id. at 190, 20 P.3d at 623. We review the family court's conclusions of law de novo under the right/wrong standard. Id.

II. Judicial Recusal
"Decisions on recusal or disqualification present perhaps the ultimate test of judicial discretion and should thus lie undisturbed absent a showing of abuse of that discretion." TSA Int'l Ltd. v. Shimizu Corp., 92 Hawai`i 243, 252, 990 P.2d 713, 722 (1999) (quoting State v. Ross, 89 Hawai`i 371, 375, 974 P.2d 11, 15 (1998)).

III. Motion for New Trial
We review the family court's decision to grant or deny a motion for new trial for abuse of discretion. Doe v. Doe, 98 Hawai`i 144, 150, 44 P.3d 1085, 1091 (2002).

IV. Attorney's Fees
This court reviews the denial and granting of attorney's fees under the abuse of discretion standard. The same standard applies to this court's review of the amount of a trial court's award of attorney's fees. An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant.
Chun v. Bd. of Trustees of the Employees' Retirement Sys. of the State of Hawai`i, 106 Hawai`i 416, 431, 106 P. 3d 339, 354 (2005) (internal quotation marks, citations, brackets, and ellipses omitted).

DISCUSSION

I.
Thomas asserts that the family court erred in requiring him to pay all of his children's private education expenses in addition to the full amount of child support calculated under the Amended Child Support Guidelines (ACSG). Thomas argues that the family court should have required Corinna to pay the proportion of the children's private education expenses that corresponds to her relative share of the parties' combined gross income. We agree.
In denying Thomas's request that Corinna be required to pay a proportionate share of the children's education expenses, the family court referred to the AITD in which Thomas agreed to pay all of the children's private education expenses through high school. The family court rejected Thomas's request because "[Thomas] undertook the obligation to pay these expenses because of his earnings ability and [Thomas] still has the financial ability to meet his obligation."
However, the record contains compelling support for Thomas's claim that his agreement to pay for all the children's private education expenses in the AITD was contingent on the parties' additional agreement to a downward deviation in Thomas's child support obligation from the ACSG amount. Any finding to the contrary would be clearly erroneous.
The record shows that on the same day that the AITD was filed, Corinna filed an ACSG Worksheet, signed by Corinna, which showed that Thomas's child support obligation, as calculated under the ACSG, was $1,830. Attached to the ACSG Worksheet was an unsigned Exceptional Circumstance Form, which requested that the family court deviate downward from the calculated child support obligation because "the parties have agreed to the monthly child support amount of $1,430 (instead of the $1,830 Guidelines amount)" in light of Thomas's paying for the children's private education expenses and being "solely responsible for any uninsured medical and dental insurance [sic]." The AITD and the subsequently filed divorce decree required Father to pay $1,430 in child support and all of the children's private education expenses and uninsured medical and dental expenses. If there was no contingent agreement between the parties for a downward departure from the ACSG amount that the family court determined was appropriate, the family court should have awarded the amount of child support calculated under the ACSG.
Under these circumstances, Thomas's agreement in the AITD to pay all of the children's private education expenses did not provide the family court with a sufficient basis to continue this obligation and also increase Thomas's child support obligation to the full amount required under the ACSG. Indeed, the AITD itself made clear that Thomas's agreement to pay all of the children's private education expenses was "subject to further order of the Court."
The family court must use the applicable ACSG to determine child support unless "exceptional circumstances warrant departure." Hawaii Revised Statutes (HRS) § 571-52.5 (2006). The party seeking an exceptional-circumstances departure from the amount computed by the ACSG has the burden of proof. Richardson v. Richardson, 8 Haw. App. 446, 457, 808 P.2d 1279, 1286-87 (1991).
In Mark v. Mark, 9 Haw. App. 184, 828 P.2d 1291 (1992), this court examined the obligation to pay child support and private education expenses under the 1989 ACSG. We labeled the amount that the ACSG requires a party to pay absent exceptional circumstances as the "ACSG norm" and noted that the ACSG has three categories of support: primary child support (PCS), standard of living adjustment (SOLA), and private education expenses (PEX). Id. at 195, 828 P.2d at 1297. We further noted that with respect to PEX, the 1989 ACSG stated that "[p]rivate education expenses are considered as part of SOLA unless such expenses are so extraordinary that SOLA cannot adequately cover it or if the child has been in private school with the agreement of the parties prior to separation.[4] Id.
We interpreted the above-quoted PEX provision in the ACSG to mean:
that (1) when with the agreement of the parties the child has not been in private school since prior to separation, then PCS and SOLA include PEX unless and to the extent such expenses are so extraordinary that PCS and SOLA cannot adequately cover the child's living expenses including PEX; or (2) when with the agreement of the parties the child has been in private school since prior to separation, then PCS and SOLA do not include PEX and PEX is a separate item.
Thus, there are three possibilities:
(A) In situation (1), the ACSG norm requires the non-custodial parent to pay the total of PCS plus SOLA as his or her share of the total of the child's living expenses including PEX. In situation (1), the party seeking an order requiring the non-custodial parent to pay more or less than the ACSG norm for the total of the child's living expenses including PEX has the burden of proving exceptional circumstances.
(B) In situation (2), the ACSG norm requires the non-custodial parent to pay the total of PCS plus SOLA as his or her share of the child's living expenses not including PEX. In situation (2), the party seeking an order requiring the non-custodial parent to pay more or less than the ACSG norm for the child's living expenses not including PEX has the burden of proving exceptional circumstances.
(C) In situation (2), the norm requires each parent pay that proportion of PEX that his or her monthly gross income bears to the combined monthly gross income of both parties. In situation (2), the party seeking an order requiring either parent to pay more or less than the norm for PEX has the burden of proving exceptional circumstances.
The family court must decide (B) before it decides (C).
Id. at 196, 828 P.2d at 1298 (emphasis added).
Here, we are in possibility C described above. The children attended private school with the agreement of the parties prior to the parties' separation. The norm for PEX thus requires that "each parent pay that proportion of PEX that his or her monthly gross income bears to the combined monthly gross income of both parties." Id. Instead, the family court ordered Thomas to pay 100% of the PEX, even though his share of the parties' combined monthly gross income was less than 100%, without requiring Corinna to prove exceptional circumstances for departing from the norm. We conclude that under our decision in Mark, the family court abused its discretion in not requiring Corinna to pay her proportionate share of the PEX, where the family court made no finding of exceptional circumstances for a departure.[5]

II.
Thomas argues that the family court abused its discretion in ordering him to liquidate his Merrill Lynch IRA and his annuity account with Prudential Financial and to place the funds from those accounts in a trust for his children, in order to ensure his payment of their future private education expenses and uninsured health care expenses. At the time of trial, Thomas's Merrill Lynch account contained $121,858 and his Prudential Financial account contained $122,528. Thomas argued to the family court that the forced liquidation of his accounts would expose him to significant early-withdrawal penalties, fees, and federal and state taxes, which he claimed would exceed $100,000. We agree with Thomas that the family court abused its discretion in ordering him to liquidate his accounts without considering less punitive or costly alternatives.
As this court has previously stated:
[A]s a general rule, it is an abuse of discretion for the family court to require one parent, without his or her consent, to transfer to the other parent his or her title to an asset in lieu of his or her obligation to pay prospective child support to the other parent. Absent special circumstances, the payor should be allowed to decide the source of such payments.
Wakayama v. Wakayama, 4 Haw. App. 652, 655, 673 P.2d 1044, 1046 (1983).
The family court based its decision to order Thomas to liquidate his accounts and place the proceeds in trust on its finding that Thomas had repetitively made late payments of private education expenses and had failed to provide prompt medical and dental care. The evidence, however, showed that Thomas's late payment of the children's tuition came during a time when he was heavily involved in the military's preparation for the Iraq war, and that Thomas paid all the outstanding private education expenses, including late fees. With respect to the family court's finding that Thomas had failed to provide the children with prompt medical and dental care, the evidence showed that there was a gap in medical coverage during the period that Thomas converted from active-duty-miliary to retired-military status. During this gap period, Thomas asked that the children refrain from non-emergency medical treatment, but agreed to pay for any uninsured medical expenses incurred during this period.
We conclude that under the circumstances of this case, the family court erred in ordering the forced liquidation of Thomas's IRA and annuity accounts so that the funds from those accounts could be placed in a trust. Corinna does not dispute that the forced liquidation of Thomas's accounts will result in Thomas's having to pay significant penalties and taxes. We conclude that the family court was required to provide less punitive means of securing Thomas's future payment of the children's private education expenses and uninsured medical expenses.[6]

III.
Thomas argues that the family court erred in denying his request for reimbursement of spousal support that he paid while Corinna was cohabiting with her boyfriend.
The divorce decree, which incorporated the AITD, placed an affirmative duty on Corinna to advise Thomas of "any cohabitation undertaken as a conscious decision to live together in lieu of marriage which (the parties agree) may constitute a material and significant change of circumstances." Corinna admitted at trial that she had been cohabiting with her boyfriend from about January of 2003, but had not notified Thomas of this situation. In its findings of fact, the family court noted that Corinna's boyfriend testified at trial that he and Thomas had seen each other near Corinna's apartment, in the neighborhood, and at the children's school between 2003 and 2005. However, there was no substantial evidence presented, and the family court did not find, that Thomas was aware that Corinna was cohabiting with her boyfriend.
Nevertheless, the family court denied Thomas's request for reimbursement of spousal support
because [Thomas] failed to raise his request until after the alimony had terminated in accordance with the Divorce Decree and, secondly, because raised after the alimony had terminated, there was no "material and significant change in circumstances" supporting any modification or cessation. Finally, equity does not require [Corinna] to reimburse [Thomas] considering all the facts and circumstances of this case.
In support of this decision, the family court found that under the terms of the divorce decree, either party could have investigated and filed a motion for modification of alimony and that Thomas failed to investigate and file a motion to terminate alimony while Corinna was still receiving alimony.
We conclude that the family court abused its discretion in basing its decision on Thomas's failure to investigate and discover Corinna's cohabitation with her boyfriend, when the divorce decree placed an affirmative duty on Corinna to disclose any cohabitation undertaken as a conscious decision to live together in lieu of marriage. We further conclude that the family court's reference to "equity" does not provide sufficient support for its decision, especially since the court did not identify the equitable factors it considered. We vacate the family court's decision denying Thomas's request for reimbursement of spousal support. Because the family court denied Thomas's request on the ground that Thomas had failed to investigate and discover Corinna's cohabitation, it did not reach the question of whether Corinna's cohabitation was undertaken as a conscious decision to live together in lieu of marriage or whether Corinna's cohabitation constituted a material and significant change in circumstances. We remand the case for consideration of these matters.

IV.
The family court granted Corinna's request to add the children to her medical insurance plan and to include the children's portion of the insurance premium, $489.04 per month, in recalculating Thomas's child support obligation. The effect of this decision is to increase Thomas's child support obligation. Thomas argues that the family court abused its discretion in rendering this decision because the evidence showed that the medical coverage under Thomas's military plan "was not inadequate but merely inconvenient."
We conclude that the family court did not abuse its discretion in rendering its decision. The family court made the following pertinent findings of fact in support of its decision.
99. The children lost their TRICARE PRIME medical coverage effective September 1, 2005 (when [Thomas] was officially retired from the U.S. Navy), because [Thomas] failed to make the appropriate elections when he processed his retirement paperwork.
100. The children's medical coverage was reinstated in October 2005 only because [Corinna] learned it had lapsed, contacted [Thomas] and he then reinstated it.
101. The children had no dental coverage from September 1, 2005 (when [Thomas] retired), through the date of trial (January 3, 2006).
. . . .
103. [Corinna] has had numerous problems in obtaining timely specialty medical and vision care for the children under the military TRICARE plan in part because the children's sponsor [Thomas], resides in a different TRICARE region than the children do.
. . . .
106. [Thomas] took no action to cover the children under his civilian federal employee health care benefits when he began federal employment in July, 2005 and was still investigating the possibility at trial.
(Citations omitted).
Thomas does not challenge these findings of fact on appeal, and we must therefore accept them for purposes of this appeal. See Bremer v. Weeks, 104 Hawai`i 43, 63, 85 P. 3d 150, 170 (2004) ("`[F]indings of fact . . . that are not challenged on appeal are binding on the appellate court.'"). Based on the unchallenged findings of fact, the family court did not abuse its discretion in rendering its decision regarding the children's medical insurance coverage.

V.
Thomas argues that Judge Wallace abused his discretion in failing to recuse himself and in refusing to grant Thomas's motion for a new trial. During the trial, Corinna's counsel elicited, without objection, testimony from Thomas that he "filed a civil union" in another state with his partner. After the family court entered its Post-Decree Decision and Order, Thomas moved to reopen testimony and for a new trial, arguing that Judge Wallace's presiding over the trial raised an appearance of impropriety. In support of this argument, Thomas claimed that after Judge Wallace rendered the family court's decision, Thomas learned through internet research that "in 1998 [Judge Wallace] had taken a public stand by way of a letter to the editor of The Honolulu Star[-]Bulletin against civil union [s] when this legislation was being considered in Hawaii and held a position of authority with The Church of Latter Day Saints in Hawaii." Thomas, however, did not submit a copy of the letter to the editor that he referred to in his motion, and this letter is not part of the record.
HRS § 601-7(b) (1993) provides a means for a party to disqualify a judge based on personal bias or prejudice. HRS § 601-7(b) provides in relevant part:
(b) Whenever a party to any suit, action, or proceeding, civil or criminal, makes and files an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against the party or in favor of any opposite party to the suit, the judge shall be disqualified from proceeding therein. Every such affidavit shall state the facts and the reasons for the belief that bias or prejudice exists and shall be filed before the trial or hearing of the action or proceeding, or good cause shall be shown for the failure to file it within such time. No party shall be entitled in any case to file more than one affidavit; and no affidavit shall be filed unless accompanied by a certificate of counsel of record that the affidavit is made in good faith.
Thomas did not seek to disqualify Judge Wallace before trial and only filed a motion seeking Judge Wallace's recusal and a new trial after Judge Wallace had issued the Post-Decree Decision and Order.
On appeal, Thomas does not assert that Judge Wallace was actually biased or prejudiced against him. Instead, Thomas contends that Judge Wallace gravely abused his discretion in refusing to recuse himself and grant a new trial pursuant to Canon 2 of the Hawai`i Revised Code of Judicial Conduct (RCJC) (1992), which states that " [a] judge shall avoid . . . the appearance of impropriety in all of the judge's activities."[7]
In Office of Disciplinary Counsel v. Au, 107 Hawai`i 327, 113 P.3d 203 (2005), the Hawai`i Supreme Court stated:
[a]lthough a mere appearance of impropriety warrants a judge's recusal, "[the 1992 RCJC] Canon 3(E)(1) limits recusal to situations where the judge's impartiality might reasonably be questioned [.]" "[T]he test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired[.]" Therefore, "the test for disqualification due to the appearance of impropriety is an objective one, based not on the beliefs of the petitioner or the judge, but on the assessment of a reasonable impartial onlooker apprised of all the facts."
Id. at 338, 113 P.3d at 214 (internal citations omitted).
We conclude that Thomas failed to establish that Judge Wallace abused his discretion in failing to recuse himself and grant a new trial based on an appearance of impropriety. As noted, Thomas did not submit the letter which he asserted Judge Wallace wrote to the editor of the Star-Bulletin. Thus, the exact content of such letter is not before us for review. See State v. Hoang, 93 Hawai`i 333, 334, 3 P.3d 499, 500 (2000) (stating that "the appellant bears the burden to show error by reference to matters in the record").
Moreover, in this case. Judge Wallace was not called upon to rule on the validity of civil unions, but was deciding motions for post-decree relief in a divorce action that involved issues of child and spousal support. Thomas's allegations regarding Judge Wallace's position in his church and the views he expressed in a letter to the editor did not establish an appearance of impropriety. There is no indication in the record that Judge Wallace relied upon either Thomas's civil union or Judge Wallace's religious beliefs in making his rulings. See In re Sawyer, 41 Haw. 270, 279 (1956) (stating that "an impersonal prejudice resulting from the judge's background, association or experience . . . is not sufficient" to warrant disqualification under the then-applicable disqualification statute); State of Idaho v. Freeman, 507 F. Supp. 706, 729 (D. Idaho 1981) (concluding that disqualification was not warranted where the judge was an officer of a church that had taken a position on a matter before the court and noting that "a judge's background associations, which would include his religious affiliations, should not be considered as grounds for disqualification"); City of Cleveland v. Cleveland Elec. Illuminating Co., 503 F. Supp. 368, 377 (N.D. Ohio 1980) ("It is not sufficient if the alleged bias or prejudice arises out of the judge's background and associations rather than his appraisal of the complaining party personally . . . ."). There is also no indication in the record that Judge Wallace held any personal animus or bias against Thomas based on Thomas's civil union.
In State v. Ross, 89 Hawai`i 371, 974 P.2d 11 (1998), the Hawai`i Supreme Court noted:
[I]n the real world, "possible temptations" to be biased abound. Judges are human; like all humans, their outlooks are shaped by their lives' experiences. It would be unrealistic to suppose that judges do not bring to the bench those experiences and the attendant biases they may create. A person could find something in the background of most judges which in many cases would lead that person to conclude that the judge has a "possible temptation" to be biased. But not all temptations are created equal. We expecteven demandthat judges rise above these potential biasing influences, and in most cases we presume judges do.
Id. at 381, 974 P.2d at 21 (quoting Del Vecchio v. Illinois Dept. of Corrections, 31 F.3d 1363, 1372 (7th Cir. 1994). We conclude that Thomas has failed to demonstrate that Judge Wallace abused his discretion in denying Thomas's motion seeking Judge Wallace's recusal and a new trial.

VI.
We vacate the family court's award of $45,000 in legal fees to Corinna. HRS § 580-47(f) (2006) provides:
(f) Attorney's fees and costs. The court hearing any motion for orders either revising an order for the custody, support, maintenance, and education of the children of the parties, or an order for the support and maintenance of one party by the other, or a motion for an order to enforce any such order or any order made under subsection (a) of this section, may make such orders requiring either party to pay or contribute to the payment of the attorney's fees, costs, and expenses of the other party relating to such motion and hearing as shall appear just and equitable after consideration of the respective merits of the parties, the relative abilities of the parties, the economic condition of each party at the time of the hearing, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case.
(Emphasis added.) We conclude that the family court should have the opportunity to reconsider its award of attorney's fees in light of our decision in this appeal and the family court's decisions on remand.

CONCLUSION
Based on the foregoing, 1) we vacate the portions of the Post-Decree Decision and Order and the subsequent orders and judgments issued by the family court from which Thomas appeals that a) require Thomas to pay all of his children's private education expenses in addition to the full amount of child support calculated under the ACSG; b) order Thomas to liquidate his Merrill Lynch and Prudential Financial accounts and place the funds from those accounts in trust to ensure his payment of his children's private education expenses and uninsured health care expenses; c) denied Thomas's motion for reimbursement of certain spousal support paid to Corinna; and d) awarded $45,000 in attorney's fees to Corinna; 2) we affirm the remainder of Post-Decree Decision and Order and the subsequent orders and judgments from which Thomas appeals; and 3) we remand the case for further proceedings consistent with this Memorandum Opinion.
NOTES
[1] Thomas filed a notice of appeal from the Post-Decree Decision and Order, and then five amended notices of appeal from subsequent orders and judgments issued by the family court. Citing this court's decision in Chan v. Chan, 7 Haw. App. 122, 748 P.2d 807 (1987), Corinna argues that Thomas's amended notices of appeal did not perfect an appeal from any of the orders and judgments filed after his initial notice of appeal. In Chan, we stated that the procedure of filing an amended notice of appeal rather than a separate notice of appeal to avoid additional paperwork and fees,

although understandable, may create a bigger and more expensive problem than it attempts to solve. Since an amended notice of appeal relates back to the notice of appeal it purports to amend, it does not appeal an order, judgment, or decree entered subsequent to the notice of appeal it purports to amend. Conversely, a new notice of appeal has no relation to a previously filed notice of appeal. The fact that a notice of appeal is titled "Amended" is evidence that it is in fact an amended notice of appeal. The fact that a notice of appeal appeals an order, judgment, or decree entered subsequent to the prior notice of appeal is evidence that it is in fact not an amended notice of appeal.
Id. at 128, 748 P.2d at 811-12. Here, Thomas's amended notices of appeal made clear that Thomas was appealing from orders and judgments entered subsequent to previously filed notices of appeal. Moreover, the new orders and judgments identified in the amended notices of appeal sought to implement, were derived from, or were related to the Post-Decree Decision and Order that was the subject of the first notice of appeal. Under these circumstances, we conclude that we have jurisdiction to consider Thomas's claims with respect to all the orders and judgments identified in Thomas's notice of appeal and amended notices of appeal.
[2] The Honorable William K. Wallace III, per diem judge, presided over the post-decree motions at issue in this appeal.
[3] We assume that the document should have read "uninsured medical and dental expenses."
[4] The current ACSG contain a very similar provision, which states:

Private Education Expenses. The private education expenses of the subject child(ren) are considered as an expense to be paid from the SOLA portion of child support, and they are not an exceptional circumstance justifying greater-than-Guidelines child support, unless such expenses are so extraordinary that SOLA cannot adequately cover them, or if the child has been in private school with the agreement of the parties prior to separation.
[5] We reject Thomas's suggestion that his payment of PCS and SOLA includes the PEX for Child 2 because Child 2 was not attending private school prior to the parties' separation. The record supports the family court's finding that both children were attending private school with the agreement of the parties prior to their separation.
[6] On appeal, we issued an order which granted in part Thomas's motion for a partial stay of the family court's order requiring him to liquidate his Merrill Lynch and Prudential Financial accounts and to place the proceeds in a trust. We later modified our order after additional motions were filed by the parties. Our order, as modified, 1) stayed the portion of the family court's order that required Thomas to liquidate 100 percent of his accounts and deposit all of the proceeds into trust; 2) continued the freeze on the accounts imposed by the family court pending the appeal, but authorized the family court to order a partial liquidation of the accounts in amounts necessary to pay required private education expenses or uninsured medical expenses that were about to become due; and 3) stated that the stay would become void upon Thomas's failure or refusal to make timely payment of the required educational and medical expenses.
[7] The Hawai`i RCJC was amended in 2008. The requirement that "[a] judge. . . shall avoid . . . the appearance of impropriety" is now set forth in Rule 1.2 of the current version of the Hawai`i RCJC.