938 P.2d 1170

Jane DOE, Petitioner–Appellee,

v.

Richard ROE, Respondent–Appellant.

Jane DOE, Petitioner–Appellee/Cross–
Appellant,

v.

Richard ROE, Respondent–
Appellant/Cross–
Appellee.

Jane DOE, Petitioner–Appellant/Cross–
Appellee,

v.

Richard ROE, Respondent–
Appellee/Cross–
Appellant.

Nos. 17105, 17216 and 18034.

Intermediate Court of Appeals of Hawai'i.

April 25, 1997.

James N. Duca and Elton John Bain (Denise Balanay, with them on the briefs for Nos. 17105 and 17216; Cynthia T. Tai, with them on the briefs for No. 18034)(Kessner Duca Umebayashi Bain & Matsunaga, of counsel), Honolulu, on the briefs for respondent.

Jane Doe, petitioner, pro se, on the briefs.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

BURNS, Chief Judge.

These appeals involve petitioner Jane Doe (Mother) and respondent Richard Roe (Father) and orders by the family court modifying its stipulated June 4, 1984 Judgment[1]

---

1. The word "Judgment" is a misnomer. The family court is a court of equity. Hawai'i Revised Statutes (HRS) § 571–3 (1993). A "decree" is the judgment of a court of equity. Black's Law Dictionary 410 (6th ed. 1990). Although under the Hawai'i Rules of Civil Proce-

which had ordered Father to pay Mother child support for their daughter (Daughter).

Father's appeal of the family court's April 28, 1993 oral order resulted in appeal No. 17105. By operation of Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(a)(2),[2] it is in fact an appeal of the family court's May 25, 1993 Decision, Order, and Judgment (May 25, 1993 DOJ).[3]

Appeal No. 17216 is Mother's cross-appeal and Father's second appeal of the May 25, 1993 DOJ and the corresponding June 24, 1993 Findings of Fact and Conclusions of Law (June 24, 1993 FsOF and CsOL).

Appeal No. 18034 is an appeal by Mother and a crossappeal by Father of the family court's June 9, 1994 Order Granting in Part Plaintiff's Motion and Affidavit for Relief After Order or Decree Filed on [April 6, 1994] (June 9, 1994 Order).

Appeal Nos. 17105, 17216, and 18034 have been consolidated under appeal No. 17105. For clarity, however, we will refer to each appeal under its separate number.

## THE AMENDED CHILD SUPPORT GUIDELINES APPLY

Hawai'i Revised Statutes (HRS) § 571–52.5 (1993) states that "[w]hen the court establishes or modifies the amount of child support required to be paid by [Father], the court shall use the guidelines established under section 576D–7, except when exceptional circumstances warrant departure." Similarly, HRS § 584–15(e) (1993) states that "[i]n

determining the amount to be paid by a parent for support of the child and the period during which the duty of support is owed, a court enforcing the obligation of support shall use the guidelines established under section 576D–7."

On February 1, 1988 the family court published its Child Support Guidelines (CSG). *Hawaii Divorce Manual*, 1 Hawaii Inst. for Continuing Legal Education § 3, at 2 (5th ed. 1996). To reconcile with pre-CSG cases, the CSG provided, in relevant part, as follows:

> These guidelines *may* be applied immediately and *shall* take effect in *all* types of cases involving child support orders heard from and after *March 1, 1988*, except that in cases in which stipulations were entered into prior to *February 19, 1988*, these Guidelines need not be applied provided the case in which the stipulation was reached is heard prior to *May 1, 1988*.

(Emphasis in original.)

On March 15, 1991 the family court published its Amended Child Support Guidelines (ACSG)[4] which apply in this case commencing July 1, 1991. We interpret the statement in HRS § 576D–7(d) (1993) that "[t]he most current guidelines shall be used to calculate the amount of the child support obligation[,]" as meaning that the CSG apply pre-July 1, 1991, and the ACSG apply commencing July 1, 1991.

As we noted in *Richardson v. Richardson,* 8 Haw.App. 446, 456, 808 P.2d 1279, 1286 (1991), the ACSG authorize the computation of child support in three parts as follows:

dure Rule 54(a) the word "judgment" includes "a decree," the Hawai'i Family Court Rules (HFCR) continues to use the word "decree" rather than the word "judgment." HFCR Rule 54(a).

2. Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(a)(2) states as follows:

> Except as provided in (a)(4) of this rule, notice of appeal filed after the announcement of a decision or order but before the entry of the judgment or order shall be treated as filed after such entry and on the day thereof.

3. We refer to this document as the May 25, 1993 Decision, Order, and Judgment (May 25, 1993 DOJ); however, the full title of this document is:

> Order Vacating *Sua Sponte*, and Re-issuing, as of April 28, 1993, the Decision, Order, and

Judgment in this Matter of February 19, 1993; Denying as Moot Plaintiff's Motion to Extend Time to Appeal, Plaintiff's Motion for Reconsideration/Further Hearing of Decision, Order and Judgment or, in the Alternative, for Rule 60 Relief from Said Order or Decree, and Defendant's Motion to Vacate Decision, Order and Judgment Filed February 19, 1993; Reconsidering *Sua Sponte*, and Modifying the Decision, Order and Judgment as of April 28, 1993.

4. On September 22, 1994 new Amended Child Support Guidelines' (ACSG) were published to take effect on November 1, 1994. *Hawaii Divorce Manual*, 2 Hawaii Inst. for Continuing Legal Education § 16, at 10 (5th ed. 1996). The changes are not relevant to the issues in this case.

Part I governs Primary Child Support (PCS); Part II governs the Standard of Living Adjustment (SOLA); and Part III governs the Exceptional Circumstance Deviation (ECD) (plus or minus) from the total of PCS plus SOLA.

In *Richardson*, we further noted that PCS plus SOLA is presumptively the amount that should be ordered and that the party seeking an ECD has the burden of proof. *Id.* at 457, 808 P.2d at 1286–87.

### FACTS

On May 4, 1978 Mother gave birth to Daughter. On April 23, 1984 Mother filed a petition against Father alleging his paternity of Daughter and seeking child support. Father admitted his paternity of Daughter.

The stipulated June 4, 1984 Judgment ordered Father to pay child support of $930.00 per month commencing April 1, 1984; annual cost-of-living increases of child support commencing January 1, 1985; "the cost of tuition for the normal school year for Punahou School (or a comparable private school) ... [and] the tuition for said child to attend a university, college, trade school or other accredited post high school educational institution"; for his Hawaii Medical Service Association medical and hospital service insurance policy or equivalent covering Daughter; for a dental insurance policy covering Daughter; for all of Daughter's medical and dental expenses in excess of the amount paid by insurance; and for no less than $100,000 life insurance on his life for the benefit of Daughter.

Daughter enrolled at Punahou School in kindergarten and remained at Punahou School through the time of the June 4, 1984 Judgment and thereafter.

On August 16, 1988 Mother filed an Order to Show Cause (August 16, 1988 OSC) for an increase in child support. The family court's order entitled "Order Following Hearing on Petitioner's Order to Show Cause for Relief After Order or Decree" (February 26, 1990 Order) denied Mother's August 16, 1988

OSC. Paragraph 1 of that order states as follows:

1. **Child Support.** There has been no material change in [the] circumstances of the parties. [Mother's] motion for an increase in child support in accordance with [the] Child Support Guidelines is denied.

On April 20, 1990 the family court entered its FsOF and CsOL (April 20, 1990 FsOF and CsOL). COL 1 states as follows:

1. There was no material change in circumstances from the child support order of June 4, 1984 to the date of the trial. Without a change in circumstances, [Mother's] motion must be denied.

Mother timely appealed. In *Jane Doe VII v. Roe VII*, 8 Haw.App. 437, 809 P.2d 449 (1991), we vacated paragraph 1 of the February 26, 1990 Order and COL No. 1 of the April 20, 1990 FsOF and CsOL and remanded the matter for further proceedings. *Id.* at 445, 809 P.2d at 453.

On April 1, 1992 Mother filed another Order to Show Cause (April 1, 1992 OSC) to increase child support. On June 8, 1992 Father filed an Order to Show Cause (June 8, 1992 OSC) seeking to decrease child support based on a decrease in his income and the needs of Daughter. On July 9, 1992 the parties stipulated to the withdrawal of Mother's April 1, 1992 OSC in favor of the August 16, 1988 OSC which awaited a new decision after our remand.

■ After a hearing on December 8 and 9, 1992, the family court entered its February 19, 1993 Decision, Order and Judgment[5] (February 19, 1993 DOJ). For the period from August 16, 1988 through June 7, 1992, a period of 45.75 months, it decided that PCS and SOLA child support were $2,025 per month but that Daughter reasonably needed only $1,700 per month. For the period commencing June 8, 1992, it decided that PCS plus SOLA was $2,202 per month and that Father failed to prove that Daughter's reasonable needs were lower. It added a per diem adjustment of $71.42 per month,[6] thus

---

5. *See* footnote 1.

6. The 100–day adjustment was ordered as follows:

13. Accordingly, child support of $2,202 per month is ordered, retroactive to the date of filing of [Father's] Order to Show Cause (June 8, 1992), plus a 100–day adjustment.

raising the amount to $2,270 per month.[7] It continued Father's "obligation contained in the Judgment of June 4, 1984 to pay 100% of [Daughter's] private educational and medical expenses."[8] Recognizing the $4,000 Father advanced for Mother's attorney fees, the family court ordered Father to pay an additional $12,941.60 or 80% of her $16,177 total attorney fees; Father was also ordered to pay 80% of the $25,338.29 attorney fees and costs incurred by Mother since the date of the appeal; and except as modified, the June 4, 1984 Judgment remains in full force and effect.

Mother, on April 13, 1993, filed a motion for reconsideration of the February 19, 1993 DOJ. Mother's motion cited Hawai'i Family Court Rules (HFCR) Rules 58, 59, and 60. In her memorandum accompanying her motion, Mother stated, in relevant part, as follows:

The Court apparently signed and filed the Order on February 19, 1993. However, the Court then "pulled back" the Order, based on Defendant's counsel's untimely filing of objections, modified the per-diem calculations, and other calculations dependent thereon, and released the Order on March 31, 1993. Plaintiff's counsel had repeatedly called the Court in the interim (after February 19, 1993) to inquire as to the status of the Order, and was always informed that it had not been signed yet. Accordingly, Plaintiff could not have filed these motions earlier, and they are timely under Rules 59 and 60.

Father, on April 14, 1993, filed a similar motion. Father's motion cited HFCR Rules 7 and 60. In his memorandum accompanying his motion, Father stated that "[t]he

Court's Decision, Order and Judgment was filed herein on February 19, 1993.... Defendant's counsel did not receive a file-stamped copy of the Decision, Order and Judgment until March 31, 1993."

On April 28, 1993 the family court announced, and on May 25, 1993 the family court entered, the May 25, 1993 DOJ which states, in relevant part, as follows:

On February 19, 1993, the [DOJ] in this matter was filed and the [DOJ] was, due to clerical error on the part of the Court, not made available to the parties or their counsel until April 30, 1993, after the thirty (30) day appeal period contemplated by H.F.C.R. Rule 72[9] had expired.

NOW, THEREFORE, based on the above, the Court, *sua sponte*, vacates the Order of February 19, 1993, and reissues it, effective April 28, 1993.

The Court reconsiders *sua sponte* the issue of per diem adjustment and after consideration of the records and files herein and the arguments of counsel, modifies the Decision, Order and Judgment as of April 28, 1993.

\* \* \*

14. The per-diem adjustment is $71.42 on a monthly basis thus making the total child support, as of June 8, 1992, $2,270 per month ($2,202 plus $71.42 = $2,273.42 = $2,270);

14a. Beginning May 1, 1993, the per-diem adjustment is and shall be $857 per month; thus, beginning on May 1, 1993, [Father's] total monthly child support obli-

---

14. The per diem adjustment is $71.42 on a monthly basis thus making the total child support, as of June 8, 1992, $2,270 per month ($2,202 plus $71.42 = $2,273.42 = $2,270).

7. In its *General Provisions*, the ACSG specifies that "[c]hild support amounts shall be rounded to the nearest $10." *Hawaii Divorce Manual*, § 17, at 167.

8. Private education expenses include more than just tuition. They include the cost of tuition,

books, and required school fees. *Mark v. Mark*, 9 Haw.App. 184, 195, 828 P.2d 1291, 1297 (1992). The June 4, 1984 Judgment ordered Father to pay "tuition," not "private educational expenses."

9. HFCR Rule 72 is not the relevant rule. It applies to appeals to the family court "allowed by statute." The relevant rule is the rule that applies to appeals from the family court to the appellate courts, *i.e.*, HRAP Rule 4.

gation payable to [Mother] is $3,060 per month.[10]

(Footnotes added.)

The June 24, 1993 FsOF and CsOL state, in relevant part, as follows:

### FINDINGS OF FACT

* * *

2. At the time of the original Stipulated Judgment herein (June 4, 1984), [Mother] surrendered viable claims to child support from [Father] for the period from [Daughter's] date of birth until June 4, 1984, in exchange for and in consideration for *inter alia*, [Father's] agreement to bear 100% of [Daughter's] medical expense and private school expense.

3. As of August 16, 1988, [Father's] gross income was $16,125 per month.

4. As of August 16, 1988, [Mother's] income was $1,780 per month.

5. As of August 16, 1988, there was, as a matter of law, a material change of circumstances. *Jane Doe VII v. Richard Roe VII,* supra [sic].

6. [Mother's] and [Father's] incomes, as recited above, would result in a "guidelines" child support obligation of [Father] to [Mother] of $2,025 per month.

7. For the period of August 16, 1988 through June 7, 1992, this guidelines child support figure would be in excess of the reasonable needs of the child.

8. For this period (August 16, 1988 through June 7, 1992, a period of 45.75 months) [Daughter's] reasonable needs are met by [Father] paying $1,700 per month, or a total $77,775.00, plus 100% of [Daughter's] medical and private educational expense.

* * *

10. Retroactive child support of $21,-954.00 ($77,775 less $55,821), is therefore due from [Father] to [Mother].

11. As a result of the sale of [Father's] business in December, 1988, for approximately $2.2 million dollars, [Father] received approximately $1,000,000 after taxes, payments of debts, and costs of sale.

12. [Father] and his wife spent since January 1990, approximately one-half (1/2) of that amount for travel, real estate investments, and other items.

13. Of the remaining $500,000, [Father] gave one-half (1/2) to his wife, by way of a revocable living trust or otherwise, and retains control and dominion over the remaining $250,000.

14. In view of [Father's] substantial earning ability, and potential marital claims of his wife to one-half (1/2) of the proceeds of the sale of [Father's] business, such spending and transfer of funds was not unreasonable.

15. The Court will not, however, in computing child support, deduct from [Father's] gross income the debt service or loss on investments which were occasioned by the investment of a portion of these funds or otherwise.

16. As of June 8, 1992 and as of date of Trial, [Father's] gross income is $17,541 per month, which includes his employment benefits and interest on $250,000 at 3.25%.

---

**10.** The family court's May 25, 1993 DOJ "finds and orders" in relevant part as follows:

13. Accordingly, child support of $2,202 per month is ordered, retroactive to the date of filing of [Father's] Order to Show Cause (June 8, 1992), plus a 100–day adjustment;

14. The per-diem adjustment is $71.42 on a monthly basis thus making the total child support, as of June 8, 1992, $2,270 per month ($2,202 plus $71.42 = $2,273.42 = $2,270);

14a. Beginning May 1, 1993, the per-diem adjustment is and shall be $857 per month; thus, beginning on May 1, 1993, [Father's] total monthly child support obligation payable to [Mother] is $3,060 per month;

15. [Father's] child support obligation from June 8, 1992 through January 31, 1992[sic] (7.75 months) is thus $2,270 per month, or a total of $17,592.50. For this period, [Father] has paid the sum of $10,980. Accordingly, as of January 31, 1993, [Father] owes an additional $6,612.50 in retroactive child support. Beginning on February 1, 1993, [Father's] total monthly child support obligation payable to [Mother] is $2,270 per month.

Payment of $71.42 per month is payment of $857.04 per year. No explanation is given why the per-diem adjustment is $71.42 per month pre-May 1, 1993, and $857 per month post April 30, 1993.

17. [Mother's] income as of June 8, 1992, as of date of Trial, is $1,277 per month.

18. There has been a material change of circumstances in respect of [Father's] Order To Show Cause (filed June 8, 1992), including an increase in [Father's] income, a decrease in [Mother's] income, changes in child support guidelines and an increase in the reasonable needs of [Daughter].

19. Guideline child support for this period (June 8, 1992 to date of Trial) is $2,202 per month.

20. For this period, [Father] has not met his burden of showing that exceptional circumstances exist because his high earnings result in a child support figure that is in excess of the reasonable needs of the child; no exceptional circumstances to justify a reduction from scheduled child support have been shown for the period beginning June 8, 1992.

21. In the year preceding trial of this cause, [Father] exercised approximately three (3) hours of visitation with [Daughter] (less than one (1) day). [Mother] continued to bear expenses related to [Daughter] during the entire year. Further, [Father] testified that he had no plans to increase visitation unless [Daughter's] and [Mother's] behavior changed significantly.

22. A per-diem upward adjustment to reflect his lack of visitation is appropriate. Said adjustment shall reflect the fact that [Father] exercised none of the 100–day annual visitation contemplated by the guidelines.

23. The per-diem is calculated as follows:

Item 6—calculation of joint physical custody child support:

$2,202 × 6 = $13,212
− 30 × 6 = 180
-------
$13,032 divided by 12 = $1,086 per month

Item 7—Extended visitation per diem:

$2,202
−1,086
-------
$1,116 divided by 83 = $13.45

Item 8—Extensive visitation child support:

$2,202 − (13.45 × 100) = $857

TOTAL Child Support = $2,202 + $857 = $3,059 = $3,060

$857 divided by 12 (annualized) = $71.42/a month.

24. The per-diem adjustment for the period of June 8, 1992 through April 30, 1993 is $71.42 per month.

25. The child support for the period of June 8, 1992 through April 30, 1993, is thus $2,270 per month ($2,202 plus $71.42 = $2,273.42 = $2,270).

26. Beginning May 1, 1993, the per-diem shall not be annualized and shall be $857 per month; thus, beginning May 1, 1993, [Father's] total child support obligation payable to [Mother] shall be $3,060 per month.

27. To the extent that this is considered an upward adjustment of the guidelines, it is justified by the actual and reasonable expenses of [Daughter] ($3,284 per month). Moreover, [Father] has not met his burden of showing that exceptional circumstances exist because his high earnings result in a child support figure in excess of the reasonable needs of the child; no exceptional circumstances have been shown to justify a reduction from scheduled child support inclusive of the per diem adjustment.

28. All child support obligations recited herein shall be in addition to [Father's] payment of 100% of [Daughter's] medical [11] and private education expense, as provided for in the Judgment of June 4, 1984.

* * *

30. [Father] provided a standard of living for his other children ... at a similar age in a manner consistent with the child support figures ordered herein, providing them with, *inter alia,* a home with a sepa-

---

**11.** We assume that the family court's phrase "*medical expenses*" encompasses "medical and dental expenses."

rate bedroom for each, vacations, automobiles, credit cards, club memberships, sports lessons, private schools and colleges, and significant amounts of discretionary spending money.

31. [Father's] child support obligation from June 8, 1992 through January 31, 1993 (7.75 months) is thus $2,270 per month, or a total of $17,592.50. For this period, [Father] has paid the sum of $10,980. Thus, as of January 31, 1993, [Father] owes $6,612.50[.]

32. In pursuing this case at the trial level, [Mother] spent and became obligated for, as attorneys fees and costs, through trial $45,565.29. [Father] advanced $4,000 of this amount to [Mother].

33. These fees were reasonably and necessarily incurred by [Mother], who prevailed in this matter, and are not excessive.

34. [Father] has the ability to pay [Mother's] fees. [Mother] may retain the $4,000 previously advanced by [Father]. In addition, [Father] should reimburse [Mother], as the prevailing party, 80% of the remainder of the attorney's fees she incurred (80% of $41,565.29).

35. Each party shall bear their own attorney's fees incurred in post-trial motions and proceedings.

## CONCLUSIONS OF LAW

1. [Mother] has demonstrated that a material change of circumstance occurred between June 4, 1984, and August 16, 1988.

2. [Mother] has demonstrated that a material change of circumstance occurred between August 16, 1988 and June 8, 1992.

3. Exceptional circumstances exist to justify below guidelines child support for the period of August 16, 1988 through June 7, 1992.

4. No exceptional circumstance exist to justify a below guidelines child support figure after June 7, 1992.

5. The Family Court has authority and discretion to increase child support by an appropriate figure to reflect the fact a non-custodial parent exercises visitation for less than the 100 days contemplated by the child support guidelines.

6. [Mother] is the prevailing party and is entitled to retain the $4,000 advanced by [Father] for attorneys' fees, and to recover from [Father] 80% of the remaining attorneys' fees she incurred through trial in pursuing this matter.

7. It would be unjust and inequitable to modify the provision of the Judgment of June 4, 1984 to relieve [Father] of his obligation to provide 100% of [Daughter's] medical and private educational expense.

8. The child support figures ordered herein are not in excess of the reasonable needs of the child.

9. For the period from June 8, 1992 onward, [Father] has not met his burden of showing that exceptional circumstances exist because his high earnings result in a child support figure that is in excess of the reasonable needs of the child; no exceptional circumstances to justify a reduction from scheduled child support have been shown for the period beginning June 8, 1992.

To the extent that a Finding of Fact herein is a Conclusion of Law, it shall be so construed.

To the extent that a Conclusion of Law herein is a Finding of Fact, it shall be so construed.

(Footnote added.)

During the first semester of the 1993–1994 school year, Daughter attended a private school other than Punahou School. Mother paid the tuition and, in an October 4, 1993 letter, Mother asked Father to reimburse her. On December 20, 1993 Father reimbursed Mother.

In January 1994, Mother and Daughter moved to California. Daughter attended a private school in California (California School) during the second semester of the 1993–1994 school year. Mother sent Father four letters requesting payment of Daughter's cost of attendance at the California School. Father did not respond.

On April 6, 1994 Mother filed an Order to Show Cause to enforce the June 4, 1984 Judgment for private school tuition. Mother prayed for the sum of $7,885. On April 14, 1994 the family court announced, and on

June 9, 1994 the family court entered, the June 9, 1994 Order which ordered:

1. For the 1993–1994 school year [Father] shall pay directly to [Mother] the equivalent of the total cost to attend Punahou School as follows:

| | |
|---|---|
| Tuition | $7,510.00 |
| Books | 250.00 |
| Class Dues | 40.00 |
| Service Charge | 60.00 |
| | $7,860.00 |

2. For the period January 1, 1994, through April 30, 1994, [Father] shall pay directly to [Mother] the sum of $379.44 for her cost of living increase.

3. [Father] shall pay directly to [Mother] the sum of $2,321.61 representing $2,242.19 for attorney's fees and $79.42 for costs incurred by [Mother] in bringing this action.

4. If total payment in the sum of $10,-561.05, as ordered herein, is not received by [Mother] on or before May 14, 1994, judgment in said amount shall immediately enter against [Father] and in favor of [Mother].

* * *

6. The provisions of the Judgment entered on June 4, 1984 and the Order entered on May 25, 1993 shall remain in full force and effect.

On May 31, 1994 Father paid Mother $3,930 for half of a year's tuition and fees.

Mother's May 2, 1994 appeal of the April 14, 1994 announcement (and thereby the June 9, 1994 Order[12]) became appeal No. 18034. On June 22, 1994 Father filed a notice of cross-appeal. On July 7, 1994 Mother filed an Amended Notice of Appeal.

## POINTS ON APPEAL

In appeal No. 17105 of the April 28, 1993 oral order, and appeal No. 17216 of the May 25, 1993 DOJ, Father appeals: (a) the increase of Father's child support obligation beyond the ACSG non-ECD amount by adding private education expenses (PEXs); (b) the increase of the SOLA beyond the ACSG

non-ECD amount on the basis that Father does not visit Daughter for the 100–day norm per year; and (c) the finding that Father's gross income from and after June 8, 1992 was $17,541 per month.

In appeal No. 17216 of the May 25, 1993 DOJ, Mother cross-appeals the family court's: (a) failure to award ACSG non-ECD child support for the period from August 16, 1988 through June 7, 1992; (b) failure to award $3,060 monthly child support retroactive to June 8, 1992, the date of Father's OSC; and (c) failure to award all attorney fees and costs.

In appeal No. 18034 of the June 9, 1994 Order, Mother appeals the family court's failure to enforce the June 4, 1984 Judgment and the May 25, 1993 DOJ when it did not order Father to pay all of Daughter's PEXs.

In appeal No. 18034 Father cross-appeals: (a) the increase in Father's child support obligation beyond the ACSG non-ECD amount by adding PEXs to the PCS plus SOLA amount; and (b) the increase of the ACSG non-ECD amount by adding the cost-of-living increase provided for in the stipulated June 4, 1984 Judgment.

## STANDARDS OF REVIEW

Decisions determining the facts are findings of fact reviewed under the clearly erroneous standard of review. *State v. Okumura,* 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995). Decisions determining what is an exceptional circumstance authorizing an ECD from the total of PCS plus SOLA are conclusions of law reviewed *de novo* under the right/wrong standard of review. *Mack v. Mack,* 7 Haw.App. 171, 180, 749 P.2d 478, 483 (1988). Decisions whether to order ECDs are discretionary decisions reviewed under the abuse of discretion standard of review. *Id.*

## THE THREE RELEVANT PERIODS OF TIME

This case deals with the following three distinct periods of time:

12. HRAP Rule 4(a)(2).

Period 1—from Mother's August 16, 1988 OSC through June 7, 1992;

Period 2—from Father's June 8, 1992 OSC through April 30, 1993; and

Period 3—from and after May 1, 1993, the effective date of the May 25, 1993 DOJ.

## DISCUSSION

### I.

HFCR Rule 60(b)(6) authorizes the family court to relieve a party from a final order for "any other reason justifying relief from the operation of the decree." In other jurisdictions "[t]he most common 'other reason' for which courts have granted relief is when the losing party fails to receive notice of the entry of judgment in time to file an appeal." 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 2864 (1995) (footnote omitted).

The above stated 'other reason' is not available under the Hawai'i Rules of Civil Procedure (HRCP) because HRCP Rule 77(d) states:

> *Notice of Orders or Judgments.* Immediately upon entry of a judgment, or an order for which notice of entry is required by these rules, the clerk shall serve a notice of the entry by mail in the manner provided for in Rule 5 upon each party affected thereby who is not in default for failure to appear, and shall make a note in the docket of the mailing. Such mailing is sufficient notice for all purposes for which notice of the entry of a judgment or order is required by these rules. In addition, immediately upon entry, the party presenting the judgment or order shall serve a copy thereof in the manner provided in Rule 5. Lack of notice of the entry by the clerk or failure to make such service, does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 4(a) of the Hawaii [Hawai'i] Rules of Appellate Procedure.

*See, Enos v. Pacific Transfer & Warehouse Inc.,* 80 Hawai'i 345, 910 P.2d 116, *recon.*

*denied,* 81 Hawai'i 400, 917 P.2d 727 (1996); *Wong v. Wong,* 79 Hawai'i 26, 897 P.2d 953 (1995); *Bacon v. Karlin,* 68 Haw. 648, 727 P.2d 1127 (1986).

HFCR Rule 77(d) does not contain the language of HRCP Rule 77(d) quoted above. The relevant rule is HFCR Rule 97 which states as follows:

> **Mailing a copy of decree.** Within 5 days after a decree or order is entered in any case, the attorney preparing the same shall mail or deliver two **certified** copies of the decree or order and two copies of any agreements of the parties referred to therein to the attorney for the other party in case such party is represented by an attorney, or shall mail or deliver a certified copy of the decree or order and a copy of such agreement to the other party at his or her last known address if the other party is not represented by an attorney. Proof of mailing or delivery of the certified copies of the decree or order within the 5-day period to the attorney for the other party or to the party shall be made to the court forthwith. In the event the attorney preparing the decree or order fails to comply with this rule, the court, upon motion, affidavit and notice in accordance with Rule 7(b)(1), may extend the time to file appropriate motions under Rule 59 or the time to file a notice of appeal under Rule 4(a) of the Hawaii [Hawai'i] Rules of Appellate Procedure. The extension of time to file appropriate motions under Rule 59 may be granted only for this reason. Failure to comply with this rule shall also be subject to the sanctions provided by Rule 37(b) of these rules.

(Emphasis in original.) Consequently, in this context the family court's authority is different from the civil court's authority.

Mother's attorney prepared the February 19, 1993 DOJ but did not send certified copies of the February 19, 1993 DOJ to Father's attorney as required by HFCR Rule 97. The reason for Mother's attorney's inaction is not relevant. Under HFCR Rule 97, the mere fact of Mother's attorney's inaction authorizes the family court to "extend the time to file appropriate motions under Rule 59 or the time to file a notice of appeal under

Rule 4(a) of the Hawaii [Hawai'i] Rules of Appellate Procedure."

■ The fact that the family court reconsidered the February 19, 1993 DOJ presents the issue whether it validly did so. Our answer is "no." The oral decision that resulted in the February 19, 1993 DOJ was announced on January 22, 1993. Mother filed her motion for reconsideration on April 13, 1993. Father filed his motion on April 14, 1993. HFCR Rule 59(d)(1) specifies that "[a] motion for further hearing or reconsideration of decision shall be filed not later than 20 days after the announcement or filing of a decision whichever occurs sooner." Thus, both Mother's and Father's motions were filed late. The question is whether HFCR Rule 97 authorized the family court to subsequently extend the "time to file appropriate motions under Rule 59[.]" As noted above, HFCR Rule 59(d)(1) required the parties to file their motions "not later than 20 days after the announcement or filing of a decision whichever occurs sooner." Since the fact that Mother did not send certified copies of the February 19, 1993 DOJ to Father's attorney as required by HFCR Rule 97 was not a factor in the failure of the parties to file a timely "motion for further hearing or reconsideration of decision" announced on January 22, 1993, we conclude that HFCR Rule 97 did not authorize the family court to extend the time for the parties to file the motions they filed.

■ Although HRAP Rule 4(a)(2) permitted the parties to file their notices of appeal after the family court's announcement of its decision on January 22, 1993, the fact that Mother did not send certified copies of the February 19, 1993 DOJ to Father's attorney as required by HFCR Rule 97 was a factor in the failure of the parties to file a timely notice of appeal of the February 19, 1993 DOJ. Moreover, the May 25, 1993 DOJ shows that the family court was motivated by a desire to allow the parties the opportunity to appeal. We therefore conclude that the family court's May 25, 1993 DOJ validly exercised the family court's authority under HFCR Rule 97 to "extend ... the time to file a notice of appeal under Rule 4(a) of the Hawaii [Hawai'i] Rules of Appellate Proce-

dure" by commencing the thirty-day period allowed by HRAP Rule 4 for the filing of a notice of appeal on April 28, 1993 rather than February 19, 1993. Thus, we have appellate jurisdiction over the February 19, 1993 DOJ.

No statute, rule, or precedent authorized the family court on May 25, 1993 to *sua sponte* reconsider the substance of the February 19, 1993 DOJ. Therefore, except to the extent that the May 25, 1993 DOJ extended the right of the parties to appeal the February 19, 1993 DOJ, it is void.

## II.

The June 4, 1984 Judgment ordered that:

4. ... [Father] shall pay directly to [Mother] by way of separate check the cost of tuition for the normal school year for Punahou School (or a comparable private school) on July 10 of each year in full until graduation of the child from high school. In the alternative, such tuition may be paid on a monthly basis on the tenth (10th) day of every month, commencing April 10, 1984 and shall be adjusted on July 10th of each year, if necessary, to include or provide for any increase or decrease in tuition for the then forthcoming school year....

5. [Father] shall maintain his present medical and hospital service insurance policy with Hawaii Medical Service Association, or with an equivalent medical and hospital service insurance policy, and shall name the child as a beneficiary of the same.

[Father] shall also maintain a dental insurance policy for the benefit of the child. [Father] will pay the cost of medical and dental expenses in excess of the amount paid by insurance.

Father challenges the June 9, 1994 Order requiring him to pay PEXs totaling $7,860. Father argues that medical expenses and PEXs are included in SOLA and there should be no upward adjustment of child support. In this case, we disagree.

The PEXs at the California School were more than the PEXs at Punahou School. Mother contends that the family court erred in awarding her less than 100% of the PEXs

actually incurred at the California School for the second semester of the 1993–1994 school year. We remand this issue for reconsideration.

With respect to ECDs, the ACSG state, in relevant part, as follows:

Although it is impossible to predict all exceptional circumstances that warrant departure, the following examples provide some guidance:

\* \* \*

—Private education expenses are considered as part of SOLA unless such expenses are so extraordinary that SOLA cannot cover it or if the child has been in private school with the agreement of the parties prior to separation.

*Hawaii Divorce Manual,* 2 Hawaii Inst. for Continuing Legal Education § 17, at 174 (5th ed. 1996).

Father contends, in essence, as follows:

Thus, the 1984 Judgment was being vacated by the 1993 Judgment in question; however, the Court erred in giving the former judgment no effect with respect to some of the child support obligations agreed upon while making it binding with respect to other (i.e. private school) obligations.

\* \* \*

Father urges that pursuant to H.R.S. Section 576D–7, the 1991 Amended Child Support Guidelines and *Mark v. Mark,* 9 Haw.App. 184[,] 828 P.2d 1291 (1992), private school education is considered part of SOLA absent two circumstances: the child has exceptional educational needs, or there has been an agreement for private school education between the parties that predates their separation.

Father urges that neither of the two exceptions apply to this case. The 1984 Judgment would not qualify as an agreement pre-dating the separation, and in any event was vacated by the Court on the grounds that the child support provided by

that consent Judgment was no longer appropriate due to changed circumstances.

■■■ With respect to PEXs, the initial question is whether the PEXs in question are an exceptional circumstance. The ACSG expressly provides that the fact that "the child has been in private school with the agreement of the parties prior to separation" is an exceptional circumstance. Father is wrong in his assumption that the ACSG recognizes no other exceptional circumstances with respect to PEXs. The ACSG merely states one situation. It does not exclude others.

The situation stated in the ACGS is based on the notion that the facts prior to the time when the PEXs issue became an issue are relevant and material. If, pursuant to a court order entered prior to the CSG, one or both of the parents has been paying for the child's support plus the tuition part of the child's PEXs, the child's PEXs are an exceptional circumstance under the ACSG. The fact that the court order was by stipulation provides added justification. *Ching v. Ching,* 7 Haw.App. 221, 224, 751 P.2d 93, 96 (1988). Thus, the June 4, 1984 Judgment caused the PEXs to be an exceptional circumstance.

■■■ The next question is whether the family court abused its discretion when it ordered Father to pay PEXs totaling $7,860. Our answer is "no." Daughter was born on May 4, 1978; the stipulated June 4, 1984 Judgment contemplated her attendance at Punahou School or a comparable private school; the stipulated June 4, 1984 Judgment ordered Father to pay for the tuition part of Daughter's PEXs; Daughter has always attended Punahou School or a comparable private school; Mother has a low income; Father has sufficient income and assets to pay Daughter's PEXs; the family court in computing the dollar amount of Daughter's reasonable PCS and SOLA needs did not include Daughter's PEXs or her medical and dental expenses; and Father does not contend that the California School is not comparable to Punahou School. These facts constitute a substantial basis validating the family court's discretionary decision that Daughter's PEXs are reasonable under the circumstances and that Father should pay all of

Daughter's PEXs and medical and dental expenses.

It appears, however, that the family court's limitation of Father's obligation to pay Daughter's PEXs to "the equivalent of the total cost to attend Punahou School" was based on the family court's mistaken conclusions that the June 4, 1984 Judgment ordered that limitation and the family court did not have the discretion to exceed that limitation. On remand, it shall reconsider and exercise its allowable discretion sans limitation.

### III.

The February 19, 1993 DOJ ordered a per diem adjustment as follows:

13. Accordingly, child support of $2,202 per month is ordered, retroactive to the date of filing of [Father's] Order to Show Cause (June 8, 1992), plus a 100–day adjustment.

14. The per diem adjustment is $71.42 on a monthly basis thus making the total child support, as of June 8, 1992, $2,270 per month ($2,202 plus $71.42 = $2,273.42 = $2,270).

Part III of the ACSG states, in relevant part, as follows:

a. Normal Visitation:

A parent will be treated as the non-custodial parent even though he/she has visitation or physical custody arrangements for up to 100 days a year. If a parent establishes visitation or has physical custody significantly beyond 100 days per year, see c and d below regardless of the title of the custodial arrangements.

*Hawaii Divorce Manual,* § 17, at 113.

Section "c." of Part III specifies a formula for calculating the "per diem" amount the non-custodial parent is authorized to deduct from his/her child support payment for each day of "overnight visitation more than 100 days, but not exactly 50/50 joint custody (i.e. 182 1/2 days)[.]" *Id.*

The family court increased the child support payable by Father for Periods 2 and 3 because Father did not exercise the 100–day annual visitation contemplated by the ACSG.

Father asserts that the ACSG does not authorize an increase of the child support payable by a non-custodial parent who visits the child less than 100 days per year. Mother asserts that the family court abused its discretion by changing the $857 "per diem" adjustment to $71.42 per month. She further contends that the family court erred when it did not award monthly child support of $3,060 ($2,202 plus $857) commencing Period 2. We agree with Father.

The ACSG expressly (a) allows the non-custodial parent to have "visitation or physical custody arrangements for up to 100 days a year[,]" and (b) authorizes a decrease of the child support payable by the non-custodial parent who has "overnight visitation more than 100 days[.]" In contrast, it is utterly silent with respect to non-custodial parents who have visitation or physical custody arrangements for less than 100 days a year. We therefore conclude that the ACSG does not authorize the family court to use the fact that the non-custodial parent visited the child less than 100 days a year as a basis for increasing the child support payable by the non-custodial parent.

Moreover, although the family court's decision appears to be based on the assumption that if Father had exercised his rights of visitation, Mother's expenses for Daughter would have decreased, there is no evidence in the record supporting this assumption.

### IV.

The June 4, 1984 Judgment required that:

On the first (1st) day of January of each year, commencing with January 1, 1985, there shall be an automatic cost of living increase on the child support amounts, based upon the *Consumer Price Index.* The initial basis for calculations shall be the *Consumer Price [I]ndex* herein applicable as of January 1, 1984.... [B]ut in no event should the increase be more than eight percent (8%) per year.

... In the event that the United States City Average "All Items" line of the All Urban Consumers Index ceases to be pub-

lished, another index which most closely approximates the said index shall be substituted.

(Emphasis in original.)

█ Father contends that the family court's June 9, 1994 Order requiring him to pay $379.44 for Mother's cost of living increase for the period January 1, 1994 through April 30, 1994, is an unauthorized ECD. We agree. As we noted above, we are applying the ACSG when deciding the OSCs. Under the ACSG, the predictable increase in the cost-of-living in the future does not qualify as an exceptional circumstance authorizing an ECD. Therefore, the family court erred when it ordered this ECD.

### V.

Father contends that FOF No. 16 is clearly erroneous. We disagree.

### VI.

Mother contends that the family court erred when its February 19, 1993 DOJ decided that for Period 1, PCS and SOLA child support was $2,025 per month, but that Daughter reasonably needed only $1,700 per month, and awarded only $1,700 per month for Period 1. We disagree. The finding that Daughter reasonably needed only $1,700 per month is not clearly erroneous.

### VII.

Although Mother appears *pro se* in her appeals, Mother was represented by counsel in the family court. Mother contends that the family court abused its discretion when it decided not to award her 100% of her attorneys' fees and costs. She cites *Jane Doe VII v. Richard Roe VII, supra,* for the proposition that she should receive 100% of her attorney fees and costs.

In *Doe VII,* we decided that because the family court granted the mother's motion, it's conclusory explanation that "it is equitable" was inadequate to support its denial of the mother's request for attorney fees and costs. *Doe VII,* 8 Haw.App. at 445, 809 P.2d at 453. We did not decide that the mother should be awarded all or any attorney fees and costs.

*Id.* An award of attorney fees and costs supported by a reasonable explanation might have been affirmed. *See Wellman v. Wellman,* 7 Haw.App. 266, 273, 752 P.2d 1079, 1083 (1988) (holding that the court has discretion to deny an award of attorney fees and costs irrespective of the consent divorce decree).

█ An award of attorney fees and costs is based on HRS § 580–47(e) (1985), which, in relevant part, states:

(e) Attorney's fees and costs. The court hearing any motion for orders either revising an order for the custody, support, maintenance, and education of the children of the parties, ... may make such orders requiring either party to pay or contribute to the payment of the attorney's fees, costs, and expenses of the other party relating to such motion and hearing as shall appear just and equitable after consideration of the respective merits of the parties, the relative abilities of the parties, the economic condition of each party at the time of the hearing, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case.

Under this statute, the family court is given broad discretion to award attorney fees and costs. *Mark v. Mark,* 9 Haw.App. 184, 194, 828 P.2d 1291, 1297 (1992).

The instant case presents a situation similar to *Wellman.* The family court decided that Mother "prevailed in this matter[,]" her "fees were reasonably and necessarily incurred[,]" and Father "has the ability to pay" Mother's fees. However, it did not state any reason(s) for not awarding Mother all of her attorney fees and costs. Since "there is no express or apparent explanation on the record supporting the family court's decision[,]" we remand for reconsideration of Mother's request for the remaining 20% of her attorney fees and costs.

### CONCLUSION

Accordingly, we declare that except to the extent that the family court's May 25, 1993 DOJ entitled

Order Vacating *Sua Sponte,* and Re-issuing, as of April 28, 1993, the Decision, Order, and Judgment in this Matter of February 19, 1993; Denying as Moot Plaintiff's Motion to Extend Time to Appeal, Plaintiff's Motion for Reconsideration/Further Hearing of Decision, Order and Judgment or, in the Alternative, for Rule 60 Relief from said Order or Decree, and Defendant's Motion to Vacate Decision, Order and Judgment Filed on February 19, 1993; Reconsidering *Sua Sponte,* and Modifying the Decision, Order and Judgment as of April 28, 1993

extended the right of the parties to appeal the February 19, 1993 DOJ, the May 25, 1993 DOJ is void.

We affirm the family court's February 19, 1993 Decision, Order and Judgment except that we reverse the orders in its paragraph 14 requiring Father to pay a per adjustment of $71.42 per month commencing June 8, 1992.

We vacate Findings of Fact Nos. 22, 23, 24, 25, 26, and 27 and Conclusion of Law No. 5 of the Findings of Fact and Conclusions of Law entered on June 24, 1993.

We vacate paragraphs 1, 4, and 6, reverse paragraph 2, and otherwise affirm the family court's June 9, 1994 Order Granting in Part Plaintiff's Motion and Affidavit for Relief After Order or Decree Filed on [April 6, 1994].

We remand for further proceedings and orders consistent with this opinion.