953 P.2d 968

**Beverly DeMELLO, nka Beverly Figueroa, Plaintiff– Appellee,**

v.

**Jon DeMELLO, Defendant–Appellant,**

and

**State of Hawai'i, Child Support Enforcement Agency, Intervenor–Appellee.**

**No. 19163.**

Intermediate Court of Appeals of Hawai'i.

March 10, 1998.

Douglas L. Halsted, on the briefs, Hilo, for defendant-appellant.

Anson K. Lee, Deputy Corporation Counsel, on the brief, for intervenor-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

BURNS, Chief Judge.

Defendant–Appellant Jon DeMello (Father) appeals the Family Court of the Third Circuit's July 3, 1995 Findings of Fact, Conclusions of Law, and Order Granting Intervenor's Motion for Modification of Child Support Payments Filed on June 30, 1993. We affirm.

## BACKGROUND

This divorce case commenced on July 17, 1981, when Plaintiff–Appellee Beverly De-Mello, now known as Beverly Figueroa (Mother), filed for divorce from Father and for custody of daughter Danielle, born on December 10, 1975, and daughter Nicole, born on February 11, 1978. Pursuant to a Decree Granting Absolute Divorce and Awarding Child Custody, entered on December 5, 1981, Father was ordered to pay child support for his two daughters in the amount of $100.00 per child per month, for a total of $200.00 per month.

The Second Amended Stipulation Re: Support Order entered on September 24, 1982 states in relevant part, "[Father] acknowledges that ... he is delinquent in child sup-

port payments amounting to $800.00. [Father] agrees to pay $15.00 per month toward said delinquency of $800.00 to the Department of Social Services and Housing, commencing August, 1982[.]"

A Third Amended Stipulation Re: Support Order entered on March 23, 1983 continued Father's child support obligation at $100.00 per child per month until further order of the court.

On November 30, 1992, the State of Hawai'i Child Support Enforcement Agency (CSEA) filed a Motion for Increased Child Support Payments. Father was then a resident of the State of Washington. The family court's May 12, 1993 Decision and Order on Motion for Increased Child Support Payments states in relevant part as follows:

1. [Father] was served with this motion by certified mail....

... The court construes the new CSEA Motion for Increased Child Support Payments filed on November 30, 1992, as an initial pleading which was filed in the same case....

To serve [Father] by certified mail in an initial pleading, the CSEA must first seek leave of court to do so as required by HRS [Hawai'i Revised Statutes] Section 580–3(c) and Hawaii Family Court Rule 4(e)(2). CSEA did not seek an order from the court ... and for this reason service of process is defective.

2. [Father] also contends that in personam jurisdiction cannot be acquired by Hawaii [Hawai'i] in this action because he was not a domiciliary of this state at any of the times specified in HRS Section 580–3(c). [Father] was a resident of Hawaii [Hawai'i] at the time he fathered both children. The entire family resided in Hawaii [Hawai'i] at the time [Mother] and [Father] separated and at the time the divorce decree was entered in this action awarding custody of the children to [Mother] and a support obligation to [Father]. The court finds that [Father] was a domiciliary of Hawaii [Hawai'i] at the time that the cause of action arose and that in personam jurisdiction may be acquired against [Father] through proper personal service.

3. Finally, [Father] contends that the Washington State URES [Uniform Reciprocal Enforcement of Support Act] action precludes the Hawaii [Hawai'i] divorce court from acting on the motion. HRS Section 576–21 does not preclude Hawaii [Hawai'i] from enforcing its own support orders or decrees. HRS Section 576–2 specifically provides that URES remedies are in addition to and not in substitution for other remedies.

On June 30, 1993, CSEA filed a new Motion for Modification of Child Support Payments. On July 26, 1993, the court granted CSEA's Ex Parte Motion for Personal Service on Defendant Residing Outside the State of Hawaii [Hawai'i], and Father was served in the State of Washington. On July 3, 1995, the family court entered Findings of Fact, Conclusions of Law, and Order Granting Intervenor's Motion for Modification of Child Support Payments Filed on June 30, 1993 in relevant part as follows:

### FINDINGS OF FACT

1. The present child support amount of $200.00 per month was set in January 1985, prior to enactment of the Hawaii Child Support Guidelines;

\* \* \*

3. The mother's current gross monthly income is $250.00;

4. The father's current gross monthly income is $4,021.76;

\* \* \*

6. Pursuant to the Washington State Child Support Guidelines and law, the father's net child support obligation for the child NICOLE is $620.92 per month....

\* \* \*

### ORDERS

THEREFORE IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. That [Father], who has a duty to support his child NICOLE DEMELLO, born February 11, 1978, shall make increased child support payments of $620.92 per month commencing June 30, 1993, by an Order for Income Assignment and con-

tinuing until said child reaches eighteen (18) years of age, and so long thereafter, including summer months, as said child is pursuing a high school diploma. Child support for said child shall further continue uninterrupted so long as said child continues her post-high school education on a full-time basis at an accredited college or university, or in a vocational or trade school, or until said child attains the age of 23 years which ever occurs first, unless said child thereto shall die, be adopted, become emancipated or self-supporting, or until further order of the Court[.]

2. That [Father] shall provide medical, dental, drug and vision insurance coverage for his subject child if available through his employer[.]

* * *

5. That all previous orders of this Court remain in full force and effect unless modified by this Order.

## DISCUSSION

### 1.

Father contends that the family court "erred when it ruled that it had jurisdiction to hear a motion for increased child support for a non-Hawai'i domiciliary." We disagree.

### A.

█ Father contends that "[t]he child support issues in this case had been properly transferred via the URES process to the State of Washington to see that a final Order was entered into under the companion URES statute in the State of Washington." However, HRS § 576–2 (1993) states that "[t]he remedies provided in this chapter are in addition to and not in substitution for any other remedies."[1] We conclude that the fact that there was a related URES action did not terminate the family court's jurisdiction over Father in this divorce case.

### B.

HRS § 580–3.5 (1993) states as follows:

**Personal judgment against absent defendant.** In any proceeding in the family court, the court shall have the power to render a personal judgment against a party who is outside of this State and over whom jurisdiction is acquired by service of process in the manner set forth in section 580–3(b) or (c), if the party was personally served with a copy of the summons or order to show cause and complaint or other pleading upon which the judgment is based and if the party was a domiciliary of this State (1) at the time that the cause of action which is the subject of the proceeding arose, or (2) at the time of the commencement of the proceeding, or (3) at the time of service.

█ Father contends that he "was not a domiciliary of Hawaii [Hawai'i] at the time the cause of action arose (when the motion was filed)." (Footnote omitted.) We conclude that the child support proceeding commenced on July 17, 1981, when Mother filed her Complaint for Divorce and that the CSEA's June 30, 1993 motion was merely a continuation of that proceeding. In 1981, Father was a domiciliary of the State of Hawai'i and subject to in personam jurisdiction of the court. "Under HRS § 580–47 the court is clearly empowered with continuing jurisdiction regarding the support of the parties' minor children." *Napoleon v. Napoleon*, 59 Haw. 619, 624, 585 P.2d 1270, 1273 (1978) (citing *Blackshear v. Blackshear*, 52 Haw. 480, 482, 478 P.2d 852, 854 (1971)). "Where a court has continuing jurisdiction in a dissolution action, the court may exercise the power to modify a child support award upon reasonable notice even though the person notified is a nonresident at the time of modification." *In re Marriage of McLean*, 132 Wash.2d 301, 937 P.2d 602, 604 (1997) (citing E.H. Schopler, Annotation, *Necessity of Personal Service Within State Upon Nonresident Spouse as Prerequisite of Court's Power to Modify its Decree as to Alimony or*

**1.** Hawai'i's Uniform Reciprocal Enforcement of Support Act, Hawai'i Revised Statutes (HRS) Chapter 576, was repealed in 1997 and replaced by Chapter 576B, Uniform Interstate Family Support Act. HRS 576B–103 states, "Remedies provided by this chapter are cumulative and do not affect the availability of remedies under other law."

*Child Support in Matrimonial Action,* 62 A.L.R.2d 544, § 2[a], 546 (1958); and 24 Am. Jur 2d *Divorce and Separation* § 1090 (1983)). *See also, Iannone v. Iannone,* 78 Misc.2d 294, 355 N.Y.S.2d 992 (1974) (holding that since it originally had in personam jurisdiction over the mother for entry of the child support order, the rule of continuing jurisdiction in support matters resulted in its retaining jurisdiction to consider the father's motion even though the mother had departed the state).

### 2.

■ Father contends that the "court erred/abused its discretion when it ordered an increase in child support payment amounts under the facts and circumstances before it[.]" First, Father argues that HRS § 580–47(c) and (d) (1993) requires a party requesting a change in child support to allege and prove a change in circumstances. We agree.

■ Second, Father argues that there were no changed circumstances alleged as a basis for granting the motion to increase child support, and none were proven at the hearing. We disagree. Father ignores the fact that HRS § 580–47(c) states in relevant part:

(c) No order ... shall impair the power of the court from time to time to revise its orders providing for the support, maintenance, and education of the children of the parties upon a showing of a change in the circumstances of either party or any child of the parties since the entry of any prior order relating to such support, maintenance, and education. The establishment of the guidelines or the adoption of any substantive modifications made to the guidelines set forth in section 576D–7[2] may constitute a change in circumstances sufficient to permit review of the support order. The most current guidelines shall

be used to calculate the amount of the child support obligation.

(Footnote added.)

As stated in HRS § 580–47(c), "[t]he establishment of the guidelines ... may constitute a change in circumstances sufficient to permit review of the support order." The last support order was the Third Amended Stipulation Re: Support Order entered on March 23, 1983. No guidelines for child support existed at that time. The first guidelines were adopted by the Senior Judges of the Family Courts of the First, Second, Third, and Fifth Circuits of the State of Hawai'i on February 1, 1988. *See,* Amended Child Support Guidelines, *Hawai'i Divorce Manual,* 2 Hawaii Inst. for Continuing Legal Education § 17 at 103 (5th ed.1996). We conclude that the 1988 guidelines "constitute[d] a change in circumstances sufficient to permit review of the support order."

### 3.

■ Father contends that the amount of declared support needed for the child is less than the amount awarded. Father states that Mother's income/expense statement listed total expenses for two children at $840.00 a month, or $420.00 per child per month, and that his support obligation was computed to be $200.92 more than the needs of each child. We have previously noted, however, that "an award for child support is for the child's current needs based on the child's appropriate standard of living[.]" *Richardson* at 456, 808 P.2d at 1286 (quoting *Doe VI v. Roe VI,* 6 Haw.App. 629, 736 P.2d 448 (1987)). Father fails to consider that the amount listed by Mother as actual expenses may be lower than the needs of the child at the "appropriate standard of living."

■ The Amended Child Support Guidelines (ACSG) authorize the computation of child support in three parts as follows: Part I governs Primary Child Support (PCS); Part II governs the Standard of Living Ad-

2. HRS § 576D–7 (1993) states in relevant part:
   **§ 576D–7 Guidelines in establishing amount of child support.** (a) The family court, in consultation with the agency, shall establish guidelines to establish the amount of child support when an order for support is sought or being modified under this chapter. The guidelines shall be based on specific descriptive and numeric criteria and result in a computation of the support obligation.

justment (SOLA); and Part III governs the Exceptional Circumstance Deviation (ECD) (plus or minus) from the total of PCS plus SOLA. *Doe v. Roe*, 85 Hawai'i 151, 154, 938 P.2d 1170, 1172–73 (App.1997). PCS is each parent's share of the cost of maintaining a child at the poverty-level standard of living. The SOLA calculation gives the child a percentage share of the obligor parent's gross income to the extent that it exceeds the sum of (a) the obligor parent's primary support obligation for the child and all other children to whom the obligor parent owes a duty of support, (b) the obligor parent's own poverty level expenses, and (c) an allowance for the federal tax dependency exemption, if it is retained by the non-obligor parent. *Hawaii Divorce Manual*, 1 Hawaii Inst. for Continuing Legal Education § 3 at 3 (5th ed.1996). We have previously noted that "PCS plus SOLA is presumptively the amount that should be ordered and that the party seeking an ECD has the burden of proof." *Doe* at 154, 938 P.2d at 1173 (citation omitted). Father offers no evidence to support an ECD and so fails to overcome the presumption that the support obligation calculated by using the ACSG is the amount that should be ordered.

■ Father also contends that the court "overstated [Father's] income in making the calculations." Finding of Fact No. 4 in the July 3, 1995 Order states: "[Father's] current gross monthly income is $4,021.76[.]" At the May 22, 1995 hearing on the Motion for Modification of Child Support Payments, the court allowed a recess for the parties to calculate the support obligation. When the hearing reconvened after the parties had reached agreement, the court asked that a copy of the worksheet be made and counsel for Father requested permission to read the relevant numbers into the record.

THE COURT: I think what I'll do is ask my bailiff to xerox that and let's place that in the record so that we'll know that the figures that we used for future reference.

[COUNSEL FOR FATHER]: Could I—while that's being done, can I just read them into the record.

THE COURT: Sure.

[COUNSEL FOR FATHER]: It's 16087.03 which is the year to date stub— pay stub divided by four—4021.7—... 76 ....

Father's counsel's method for determining Father's gross monthly income was to take the year-to-date amount on the pay stub submitted by Father and divide it by four, since the pay stub was for the pay period ending May 5, 1995. The court did not err when it used the amount provided by Father's counsel in determining Father's current gross monthly income and in using that amount to calculate Father's child support obligation.

### 4.

■ Father contends that the court erred when it ordered the support obligation to be retroactive to June 1993, the date of the filing of the motion to amend child support. We disagree. We have previously held that a noncustodial parent who was paying child support pursuant to court order was liable for the amended amount of child support commencing on the date the custodial parent filed a motion for increased child support. *Richardson v. Richardson*, 8 Haw.App. 446, 459, 808 P.2d 1279, 1287 (1991).

### 5.

Father contends that the court erred when it allowed for the possibility that child support could continue beyond the age of eighteen. In support of his argument, Father points out that:

[t]he original Decree did not provide for support beyond the age of majority.... The June 30th motion did not seek to extend child support beyond the age of majority. No subsequent modifications were made to that motion by movant. [Mother] did not testify as to the college needs/expenses of the minor child. [Father] was entitled to have written notice of and the grounds for the motion specified under Rule 7 HFCR. This was never done.

* * *

*Assuming arguendo* that notice was given, the Family Court (which had already ruled it would follow the law of the State of

Washington) went ahead and allowed the extension until age twenty-three years with *no colorable attempt* to comply with Washington State law.

(Footnote omitted; emphases in original.)

■ We disagree. The family court was not required to apply Washington law. *See,* 59 Am.Jur.2d *Parent and Child* § 42 (1987) (duty to support child to be determined by law of the child's domicile since the state in which the child resides has an undoubted interest in the child's support and maintenance). It was authorized to apply Hawai'i law *sua sponte.* Father was protected by HRS § 580–47(a) (1993) which states in relevant part:

> Provision may be made for the support, maintenance, and education of an adult or minor child.... In those cases where child support payments are to continue due to the adult child's pursuance of education, the agency, three months prior to the adult child's nineteenth birthday, shall send notice by regular mail to the adult child and the custodial parent that prospective child support will be suspended unless proof is provided by the custodial parent or adult child to the child support enforcement agency, prior to the child's nineteenth birthday, that the child is presently enrolled as a full-time student in school or has been accepted into and plans to attend as a full-time student for the next semester a post-high school university, college or vocational school. If the custodial parent or adult child fails to do so, prospective child support payments may be automatically suspended by the child support enforcement agency[.]

The "agency" referred to is "the child support enforcement agency for the State as required under Title IV–D" created by HRS § 576D–2 (1993).

### CONCLUSION

Accordingly, we affirm the July 3, 1995 Findings of Fact, Conclusions of Law, and Order Granting Intervenor's Motion for Modification of Child Support Payments Filed on June 30, 1993.